# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
June 18, 2015

Plaintiff-Appellee,

v

KEITH DANISKA,

No. 318931
Macomb Circuit Court
LC No. 2013-000049-FC

Defendant-Appellant.

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

KEITH DANISKA,

No. 318934
Macomb Circuit Court
LC No. 2013-000083-FH

Defendant-Appellant.

Before: JANSEN, P.J., and SAWYER and FORT HOOD, JJ.

PER CURIAM.

In LC No. 2013-000049-FC (Docket No. 318931), defendant stood trial on 29 counts of different sexual offenses against two minors, CH and DH. All of the offenses were alleged to have occurred in Fraser, Michigan. A jury convicted defendant of (1) eight counts of first-degree criminal sexual conduct (CSC I) against CH, MCL 750.520b(1)(b)(*iii*) (sexual penetration of a victim between 13 and 16 years of age, and the actor is in a position of authority over the victim), (2) three counts of second-degree criminal sexual conduct (CSC II) against CH under MCL 750.520c(1)(a) (victim under 13 years of age), (3) nine counts of CSC II against CH and one count of CSC II against DH under MCL 750.520c(1)(b)(*iii*) (sexual contact with a victim between 13 and 16 years of age, and the actor is in a position of authority over the victim), and (4) one count of accosting CH for immoral purposes, MCL 750.145a. The trial court sentenced defendant to prison terms of 225 to 564 months for each CSC I conviction, 120 to 180 months for each CSC II conviction, and 24 to 48 months for the accosting a child conviction. The court ordered that two of the CSC I sentences were to be served consecutively, but all remaining sentences were to be served concurrently. In LC No. 2013-000083-FC (Docket No. 318934),

-1-

defendant stood trial before the same jury on multiple additional allegations of sexual abuse against DH, which were alleged to have occurred in Warren, Michigan. The jury convicted defendant of one count of CSC II under MCL 750.520c(1)(b)(*iii*), for which he was sentenced to 57 to 180 months' imprisonment, to be served concurrently with his sentences in LC No. 2013-000049-FC. Defendant appeals as of right in each case. We affirm.

Defendant raises identical issues in both appeals. He first argues that joinder of the charges in LC No. 2013-000049-FC and LC No. 2013-000083-FC was improper because the cases involved unrelated victims and numerous charges spanning 12 years. Defense counsel's concurrence with the prosecutor's motion for joinder waived and extinguished any substantive claim of error. *People v Kowalski*, 489 Mich 488, 503-505; 803 NW2d 200 (2011); *People v Carter*, 462 Mich 206, 214-215; 612 NW2d 144 (2000). Defendant argues, however, that defense counsel was ineffective for agreeing to the joinder, which defendant maintains was not authorized under the court rules. We disagree.

Because defendant did not raise an ineffective assistance of counsel claim in the trial court, our review of this issue is limited to mistakes apparent on the existing record. *People v Riley (After Remand)*, 468 Mich 135, 139; 659 NW2d 611 (2003). Whether a defendant has received the effective assistance of counsel comprises a mixed question of fact and law. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). "[T]he right to counsel is the right to the effective assistance of counsel." *United States v Cronic*, 466 US 648, 654; 104 S Ct 2039; 80 L Ed 2d 657 (1984) (internal quotation and citation omitted). In *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984), the United States Supreme Court held that a convicted defendant's claim of ineffective assistance of counsel includes two components: "First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." To establish the first component, a defendant must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004). With respect to the prejudice aspect of the test for ineffective assistance, the defendant must demonstrate a reasonable probability that, but for counsel's errors, the result of the proceedings would have differed. *Id*. at 663-664. The defendant must overcome the strong presumptions that his "counsel's conduct falls within the wide range of reasonable professional assistance," and counsel's actions represented sound trial strategy. *Strickland*, 466 US at 689.

"The prosecuting attorney may file an information or indictment that charges a single defendant with any two or more offenses," and a trial court may consolidate for one trial "[t]wo or more informations or indictments against a single defendant." MCR 6.120(A). MCR 6.120(B) specifies, in relevant part:

> On its own initiative, the motion of a party, or the stipulation of all parties, except as provided in subrule (C), the court may join offenses charged in two or more informations or indictments against a single defendant . . . when appropriate to promote fairness to the parties and a fair determination of the defendant's guilt or innocence.

(1) Joinder is appropriate if the offenses are related. For purposes of this rule, offenses are related if they are based on

(a) the same conduct or transaction, or

(b) a series of connected acts, or

(c) a series of acts constituting parts of a single scheme or plan.

(2) Other relevant factors include the timeliness of the motion, the drain on the parties' resources, the potential for confusion or prejudice stemming from either the number of charges or the complexity or nature of the evidence, the potential for harassment, the convenience of witnesses, and the parties' readiness for trial.

According to MCR 6.120(C), on a defendant's motion, the trial court "must sever for separate trials offenses that are not related as defined in subrule (B)(1)."

We conclude that the record supports that the charges against defendant in LC No. 2013-000049-FC and LC No. 2013-000083-FC involved "a series of connected acts," MCR 6.120(B)(1)(b), or "a series of acts constituting parts of a single scheme or plan." MCR 6.120(B)(1)(c). The prosecutor introduced evidence that before the acts of sexual abuse against CH and DH, (1) defendant similarly acted as a father figure to each boy, (2) defendant discussed sexual topics with both boys, including masturbation, (3) defendant often convinced the boys to remove most or all of their clothing while spending time at defendant's residences, (4) defendant repeatedly convinced both boys to sleep with him while he and the boys wore little or no clothing, and (5) over a period of years, both boys experienced defendant's infliction of multiple inappropriate sexual acts against them, although CH endured more extreme and more regular acts of sexual abuse than DH. With respect to defendant's primary complaint that the purported abuse period exceeded 12 years, our Supreme Court has explained that joinder is appropriate where "[e]ven if one views defendant's first arrest . . . and his second arrest . . . as discrete moments in time, direct evidence indicated that he was engaging in the same particular conduct on those dates." *People v Williams*, 483 Mich 226, 234-235; 769 NW2d 605 (2009). Furthermore, "[t]he charges stemming from both arrests were not 'related' simply because they were of the same or similar character," instead they "were related because the evidence indicated that defendant engaged in ongoing acts constituting parts of his overall scheme or plan to" sexually abuse young boys. *Id*. at 235 (internal quotation and citation omitted).

Because the offenses charged in LC No. 2013-000049-FC and LC No. 2013-000083-FC involved related acts of sexual abuse against young boys, it was not objectively unreasonable for defense counsel to concur in the prosecutor's request to consolidate the charges into one trial. Counsel is not ineffective for failing to raise a meritless position. *People v Mack*, 265 Mich App 122, 130; 695 NW2d 342 (2005). Moreover, to the extent that there was an arguable basis for severance, defense counsel reasonably may have opted for joinder as a matter of trial strategy because of the likelihood that the trial court would admit in separate trials evidence of the alleged acts of sexual abuse against other victims. MCL 768.27a; *People v Watkins*, 491 Mich 450, 486-488; 818 NW2d 296 (2012) (holding that evidence of similar other acts under MCL 768.27a

usually weighs in favor admissibility in the context of MRE 403). Accordingly, defendant has not overcome the presumption that defense counsel concurred in the joinder of the cases as a matter of sound trial strategy.

Defendant next challenges the trial court's practice of referring to the prospective jurors only in connection with their courtroom badge numbers. According to defendant, the trial court violated his right to due process by failing to clarify for the jurors that it usually adhered to this same jury selection procedure, and that the procedure was not being invoked in this case because of defendant's dangerous character. Defendant concedes that he did not object to this procedure at trial, leaving this issue unpreserved. Therefore, we review this unpreserved issue to ascertain whether any plain error affected defendant's substantial rights. *People v Hanks*, 276 Mich App 91, 92; 740 NW2d 530 (2007).

Defendant has not established a plain error on the basis of the trial court's references to the potential jurors by number. This Court has recognized the potential that the trial court's selection of an anonymous jury might violate a defendant's due process right to a fair trial. *Hanks*, 276 Mich at 92-95; *People v Williams*, 241 Mich App 519, 522-525; 616 NW2d 710 (2000). This Court has defined an " 'anonymous jury' as one in which certain information is withheld from the parties, presumably for the safety of the jurors or to prevent harassment by the public." *Hanks*, 276 Mich App at 93, quoting *Williams*, 241 Mich App at 522. An anonymous jury potentially implicates both a defendant's interest in "conduct[ing] a meaningful examination of the jury and . . . the defendant's interest in maintaining the presumption of innocence." *Williams*, 241 Mich App at 522-523. "A challenge to an 'anonymous jury' will only succeed where the record reflects that withholding information precluded meaningful voir dire or" compromised the defendant's presumption of innocence. *Hanks*, 276 Mich App at 93.

During the voir dire of the prospective jurors, the trial court explained that a blind draw process had governed the jury selection process, and that only the trial court and the court clerk knew who had appeared "on a computer-generated list of" potential jurors the court would call, and the order in which the court would call them. Before the trial court called the first prospective juror into the jury box by number, the court additionally explained that the prospective jurors should listen for their juror numbers, the court had to reference them by number, and the court might inadvertently mention a juror's name because "the old system allowed [it] to call" the potential jurors by their names.

Like the potential jurors in *Williams*, 241 Mich App at 523, the potential jurors did not qualify as anonymous "except in the most literal sense; that is, their names were not read into the record." (Internal quotation and citation omitted.) The record does not establish that the trial court withheld any relevant biographical information from the parties. On the contrary, the record discloses that the trial court, the prosecutor, and defense counsel all participated in lengthy examinations of the potential jurors concerning their places of employment, the employment pursued by the potential jurors' significant others, the number of children in the potential jurors' extended families, the potential jurors' knowledge of the court personnel, the parties, the attorneys, and the witnesses identified by the parties, whether the potential jurors or any relatives had been victims of a crime or involved in any legal action, or worked or had relatives who worked in law enforcement, and the extent of the potential jurors' experience with

divorce, among other areas of inquiry intended to focus on the potential jurors' capacities to remain fair and impartial.

Furthermore, we identified in the record "nothing . . . to indicate that the use of numbers undermined [defendant's] presumption of innocence." *Williams*, 241 Mich App at 524. The record contains no hint that any potential jurors attributed "any significance [to] the use of numbers instead of names," especially in light of the trial court's comment about a computer randomly selecting potential jurors by number rather than name, a process it attributed to "the system." *Hanks*, 276 Mich App at 94; see also *Williams*, 241 Mich App at 524. The trial court also properly and repeatedly instructed the jurors concerning the necessity that they remain impartial in reaching a verdict, the legal presumption of defendant's innocence, the prosecutor's burden to prove beyond a reasonable doubt all the elements of the charges against defendant, the jury's responsibility to decide the relevant facts solely on the basis of the evidence admitted during the trial, and that defendant did not need to testify or do anything to prove his innocence. A jury is presumed to have followed its instructions. *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008). Accordingly, defendant has not demonstrated any error, plain or otherwise.

Defendant also complains that because he faced more than 20 counts involving CH and more than 10 counts concerning DH, and the boys recounted many instances of uncharged abuse, the trial court erred requiring reversal by failing to reference in the jury instructions dates for the charges and a specific unanimity instruction. Defense counsel's affirmative approval of the court's jury instructions, which contained a general unanimity instruction, waived and extinguished this claim of error. *Kowalski*, 489 Mich at 503-505; *Carter*, 462 Mich at 214-215. Even if the issue had not been waived, however, defendant has not demonstrated entitlement to relief under the standards governing review of a forfeited claim of error. *Kowalski*, 489 Mich at 505.

A criminal defendant in Michigan possesses "the right to a unanimous jury verdict." *People v Chelmicki*, 305 Mich App 58, 67; 850 NW2d 612 (2014). To guard the defendant's right to unanimity, the trial court owes a duty to correctly instruct the jury concerning the unanimity requirement. *Id*. The trial court often satisfies its responsibility by reading a general unanimity instruction. *Id*. But the trial court might need to read the jury a specific instruction regarding unanimity if the prosecutor has proven "more than one act . . . as evidence of the actus reus of a single criminal offense and each act is established through materially distinguishable evidence that would lead to juror confusion." *Id*. (internal quotation and citation omitted).

The jury convicted defendant of eight counts of CSC I involving CH, six counts of oral penetration and two counts of anal penetration. Concerning the two counts of anal penetration, the prosecutor introduced evidence that defendant had inserted his penis and a finger into CH's anus, which CH described as having occurred repeatedly on unspecified dates when he was between 10 and 15 years of age. Regarding the six counts of oral penetration, CH testified that on repeated and unspecified occasions when he was between 10 and 15 years of age, defendant forced his penis into CH's mouth and put CH's penis into his mouth. Although the prosecutor introduced through CH's testimony "more than one act . . . as evidence of the actus reus of" the eight CSC I counts for which the jury convicted defendant, we reject that material distinctions existed in the proofs of defendant's acts of penetration. *Chelmicki*, 305 Mich App at 68 (internal

quotation and citation omitted). Defendant denied all of the alleged acts of sexual abuse as conjured by both victims. The defense did not offer any different evidence regarding the multiple acts of penetration, and we detect no indication that the jurors labored under any confusion or disagreement concerning "the factual basis of defendant's guilt." *People v Cooks*, 446 Mich 503, 524; 521 NW2d 275 (1994). Under the circumstances, the trial court's general unanimity instruction was sufficient to protect defendant's rights. *Id*.

With respect to defendant's 12 convictions of CSC II involving CH, we likewise conclude that the trial court protected defendant's rights by reading the general unanimity instruction. *Cooks*, 446 Mich at 524. CH testified to having endured many conceptually similar acts of sexual contact when he was between the ages of 10 and 16, namely defendant's touching of CH's penis and defendant's placement of his penis in CH's hands. Defendant again characterized all of the acts of sexual abuse as fabricated, although he did introduce different, specific evidence to rebut CH's account of defendant's having touched two boys' penises on the same date. Irrespective of a witness's specific denial of any sexual contact involving him, we discern no indication that any juror confusion or disagreement existed regarding "the factual basis of defendant's guilt." *Cooks*, 446 Mich at 524. We further note that the jury acquitted defendant of one CSC II count involving CH.

The jury convicted defendant of two CSC II charges against DH for sexual contact with DH, a sexual contact in the Fraser house, and a sexual contact in a Warren residence. DH testified that when he was between 13 and 15 years of age and living in Fraser with defendant, on unspecified dates and many occasions in different areas of the house, defendant used his hand to touch DH's penis and DH's butt. DH also testified that he sometimes visited defendant in Warren on unspecified dates, and on at least 10 occasions there, they slept naked on a couch, defendant used his hand to touch DH's penis on two or three occasions, and defendant also at least once put his hand on DH's butt. DH recalled one instance when defendant asked DH to help defendant masturbate, which DH did only briefly. DH lastly remembered that one time in both Fraser and Warren, defendant used his penis to strike DH's forehead.

Our review of the record reveals that DH testified to having experienced many conceptually similar acts of sexual contact between the ages of 13 and 15, namely defendant's placement of his hand on DH's penis and his butt.[1] DH also mentioned two or three conceptually distinct instances of sexual contact. Defendant similarly disputed as fabricated all of the acts of sexual abuse alleged by DH. But no indication exists that any juror confusion or disagreement existed regarding "the factual basis of defendant's guilt." *Cooks*, 446 Mich at 524. We also emphasize that the jury acquitted defendant of six other CSC II counts involving DH, all

---

[1] The Legislature has defined "sexual contact" to include "the intentional touching of the victim's or actor's intimate parts, if . . . [it] can reasonably be construed as being for the purpose of sexual arousal or gratification, done for a sexual purpose, or in a sexual manner . . . ." MCL 750.520a(q). The Legislature has also defined "intimate parts" to include "the primary genital area, groin, inner thigh, buttock, or breast of a human being." MCL 750.520a(f).

eight gross indecency charges involving DH, and the charge that defendant had accosted DH while a minor for immoral purposes.

The last count on which the jury convicted defendant involved the accosting of CH in violation of MCL 750.145a.[2]  Our Supreme Court in *Kowalski*, 489 Mich at 499-500, summarized as follows the essential elements of accosting a minor:

"[T]he defendant (1) accosted, enticed, or solicited (2) a child [younger than 16 years of age] (or an individual whom the defendant believed to be a child) (3) with the intent to induce or force that child to commit (4) a proscribed act [an immoral act, submission to an act of sexual intercourse or gross indecency, or any other depraved or delinquent act].  Alternatively, a defendant is guilty of accosting a minor if the prosecution proves beyond a reasonable doubt that the defendant (1) [intentionally or knowingly] encouraged (2) a child [younger than 16] (or an individual whom the defendant believed to be a child) (3) to commit (4) a proscribed act.  Taken as a whole, the statute permits conviction under two alternative theories, one that pertains to certain acts and requires a specific intent and another that pertains to encouragement only."

We again detect no potential jury confusion arising from the record concerning defendant's lone conviction under MCL 750.145a.  The record reflects that the prosecutor specifically pursued a conviction on the basis of defendant's request that CH "f***" him, and the defense that CH fabricated his accounts of sexual abuse likewise applied to the charge under § 145a.  Lastly, the record contains no suggestion of juror confusion.

Accordingly, defendant has failed to establish a plain error or shown that the trial court's general unanimity instruction was insufficient to protect his substantial rights.

---

[2] MCL 750.145a provides as follows:

A person who accosts, entices, or solicits a child less than 16 years of age, regardless of whether the person knows the individual is a child or knows the actual age of the child, or an individual whom he or she believes is a child less than 16 years of age with the intent to induce or force that child or individual to commit an immoral act, to submit to an act of sexual intercourse or an act of gross indecency, or to any other act of depravity or delinquency, or who encourages a child less than 16 years of age, regardless of whether the person knows the individual is a child or knows the actual age of the child, or an individual whom he or she believes is a child less than 16 years of age to engage in any of those acts is guilty of a felony punishable by imprisonment for not more than 4 years or a fine of not more than $4,000.00, or both.

Finally, defendant argues that the trial court erred in ordering him to serve two of the CSC I sentences consecutively. A court is permitted to impose "a consecutive sentence . . . only if specifically authorized by statute." *People v Ryan*, 295 Mich App 388, 401; 819 NW2d 55 (2012) (internal quotation and citation omitted). The trial court imposed consecutive sentences pursuant to subsection (3) of the first-degree CSC statute, MCL 750.520b, which provides that "[t]he court may order a term of imprisonment imposed under this section to be served consecutively to any term of imprisonment imposed for any other criminal offense arising from the same transaction." Defendant argues on appeal that there is no evidence that any two acts occurred on the same date. The prosecutor, however, points to the testimony of the victim of an incident in which he was forced to submit to both fellatio and anal intercourse. Accordingly, consecutive sentencing on two of the counts was appropriate.

Affirmed.

/s/ Kathleen Jansen
/s/ David H. Sawyer
/s/ Karen M. Fort Hood