# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CHRISTOPHER DONALD TODD,

Defendant-Appellant.

UNPUBLISHED
December 17, 2015

No. 322587
Macomb Circuit Court
LC No. 2014-000217-FC

Before: SAWYER, P.J., and BECKERING and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals as of right his convictions following a jury trial for armed robbery, MCL 750.529, assault with intent to do great bodily harm less than murder, MCL 750.84, felon in possession of a firearm (felon in possession), MCL 750.224f, and two counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced to concurrent prison sentences of 216 to 360 months for armed robbery, 36 to 120 months for assault with intent to do great bodily harm less than murder, and 18 to 60 months for felon in possession, all consecutive to the mandatory two years for the two felony-firearm convictions,[1] with no jail credit because he was on parole. We affirm.

On September 17, 2013, after an evening of drinking and drugs, defendant and Dennis Shepler came up with a plan to rob James Butsinas or his brother John Butsinas. Shepler, who drove the get-away car, was familiar with the brothers. Defendant arrived at James's home around 11:30 a.m. carrying an envelope and a semi-automatic gun in his pocket. James answered the door, and defendant said, "I'm here to buy gold from your brother, John." James was not expecting anyone, but John had brought people over to complete transactions at James's home before, so James let him in. Once the door was closed, defendant removed his weapon and told James, "I want all your gold, diamonds, and money." James told defendant it was upstairs and got defendant to follow him to his bedroom. James told defendant it was under the bed. Instead, what was under the bed was James's revolver, which he pulled out and used to shoot defendant three times. Defendant was shot in the left wrist and twice in the chest. According to

---

[1] The two felony-firearm sentences were concurrent with each other.

-1-

James, defendant had already taken $2,000 and a gold bracelet from his dresser. Defendant denied ever seeing or taking these items.

James and defendant began to struggle. The clip fell out of defendant's gun, which he then used to strike James on the head multiple times, resulting in multiple large lacerations. The struggle went throughout the home and even outside. Once defendant broke free, he ran until he reached the car, and Shepler drove them away. Although covered in blood, James followed on foot until shortly after the car drove away.

On appeal, defendant first claims that he received ineffective assistance of counsel. Whether a defendant has been deprived of the effective assistance of counsel is a mixed question of fact and law and is reviewed, respectively, for clear error and de novo. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). "When no *Ginther* hearing has been conducted," as is the case here, "our review of the defendant's claim of ineffective assistance of counsel is limited to mistakes that are apparent on the record." *People v Mack*, 265 Mich App 122, 125; 695 NW2d 342 (2005).

Defendant complains of three actions by defense counsel that he believes constituted ineffective assistance of counsel: counsel's concession of certain elements and claims; failure to suppress the "robbery note;" and failure to object to the admission of DNA evidence. Based on our review of the record, we conclude that each of these actions constituted legitimate trial strategy and that defendant has not shown that he received ineffective assistance of counsel.

Defendant contends that trial counsel's defense was that he could not be found guilty of armed robbery because he never took anything. However, defendant argues on appeal, such a defense was contrary to the law because armed robbery did not require completion of the larceny. Certainly, there are elements of the record that support this contention. However, we believe that this argument was not based on counsel's mistaken understanding of the law, but rather was one element of a broader defense—one of contrition and mercy.

Defense counsel's opening statement likened this incident to the title of the movie, "No Honor Among Thieves." Defense counsel intimated that he was going to show the jury that James was a fence, i.e., also a criminal; that John owned a pawn shop that only paid people 20 to 30 percent of what things were worth, i.e., that he was ripping them off; and that Shepler was "a well-known burglar." Defendant, on the other hand, was simply an unemployed man looking for a way to make money, whom Shepler played and convinced to go after John as an easy mark. In other words, that while defendant did it, he was duped into it by bigger fish in the criminal pond.

Defense counsel's cross-examination focused on the discrepancy between James's testimony—that defendant said he was there to buy gold—and the reports of certain police officers that indicated that James said defendant said that he was there to sell gold, which would be more consistent with defendant being a fence and purchasing stolen goods. He also focused on the discrepancy between James's testimony that defendant took the gold and necklace, and the officers' reports that James said he handed them to defendant. Counsel noted that the DNA evidence, the hospital video, and everything else could not answer what defendant and James said to one another that day. Defense counsel then focused on defendant's injuries, eliciting testimony about how much pain he had been in, how long he was in the hospital, and that the

police were unconcerned with defendant's injuries. In other words, defendant was not only duped, but he got the worst of it in terms of injuries as well.

The record is clear that defense counsel was attempting to discredit James and get the jury to conclude that James was just as much, if not more than, a criminal as defendant. Defense counsel continued to hammer home that defendant did not take anything and, even if he did, James handed it to him. And that defendant was just trying to get away with his life after he was shot—James was trying to stop him from getting away and could have killed defendant. Defense counsel was minimizing defendant's culpability and making it seem like defendant was the victim. Simply because the strategy did not work did not make counsel ineffective for having attempted it. *People v Heft*, 299 Mich 69, 84; 829 NW2d 69 (2012). In light of the plethora of evidence against defendant, and defendant's decision to testify, defense counsel did the best he could with what he had.

Next, defendant argues that counsel was ineffective for failing to seek suppression of the robbery note because it was seized without a warrant. Plaintiff argues that, even if the search did not fall under any recognized exception to the warrant requirement, the inevitable discovery rule would apply. See *People v Hyde*, 285 Mich App 428, 439; 775 NW2d 833 (2009). We agree. Under the inevitable discovery doctrine admission of evidence obtained from an unconstitutional search is admissible if a preponderance of the evidence shows "that the items found would have ultimately been obtained in a constitutionally accepted manner." *Id.* at 439-440. Here, defendant was arrested at the hospital based on probable cause that he was the suspect in the armed robbery. Accordingly, the search of defendant's pants would have been valid as a search incident to arrest, or an inventory of his property upon arrest. And because the note was admissible in either case, counsel was not ineffective for failing to raise a futile objection to it, *People v Fike*, 228 Mich App 178, 182; 577 NW2d 903 (1998), or for failing "to advocate a meritless position," *People v Snider*, 239 Mich App 393, 425; 608 NW2d 502 (2000).

Lastly, defendant contends that his counsel was ineffective for failing to object both to the admission of a non-testifying lab scientist's DNA report and to the testimony of the officer in charge regarding the report because he did not prepare it. However, defense counsel stipulated at the pretrial hearing that the blood in the house and the car was defendant's because he did not want to wait another six months for the DNA results to come back. Therefore, defendant waived any claims of nonconstitutional evidentiary error concerning the admission of the DNA evidence. See *People v Carter*, 462 Mich 206, 216; 612 NW2d 144 (2000).

Defendant claims that his counsel only stipulated to his DNA matching that in the house. However, the record suggests otherwise. During a special pretrial hearing regarding waiting on defendant's DNA tests and seeking a joinder for Shepler's case, the prosecution noted that defense counsel indicated a willingness to stipulate to the DNA evidence. Although there is no affirmative statement on the record that defendant was willing to stipulate that the blood in the car was his, counsel's statement that it was Shepler's attorney who would have a problem with the car DNA permitted the trial court to infer that its denial of a joinder of the trials would remove any obstacles to the stipulation that defendant's DNA was in the car. Defendant is precluded from objecting to any error created by his attorney's inference to the trial court that defendant was willing to stipulate that the DNA in the car was his. *People v Witherspoon (After Remand),* 257 Mich App 329, 333; 670 NW2d 434 (2003) ("[A]n appellant may not benefit from

an alleged error that the appellant contributed to by plan or negligence."). Having agreed to stipulate that the blood was defendant's, any objections to the admission and testimony regarding the DNA results matching defendant was effectively waived.[2]

Defendant also waived his Sixth Amendment right of confrontation as it related to the DNA laboratory report. See *People v Buie*, 491 Mich 294, 315; 817 NW2d 33 (2012) (holding that the right to confrontation may be waived by trial counsel as long as counsel's actions constitute reasonable trial strategy, which is presumed, and the defendant does not object on the record). Here, defense counsel affirmatively stated that there were no objections to admission of the report, and defendant did not object to defense counsel's waiver on the record. Thus, even without the stipulation, this record shows complete waiver of this issue.

Even so, defendant's waiver of the claim did not preclude a claim of ineffective assistance of counsel. *Buie*, 491 Mich at 315 n 13. Nevertheless, we conclude that defense counsel's stipulation to the DNA evidence was a conscious and reasonable trial strategy. First, the record reflects that defendant wanted to stipulate to the DNA evidence in order for his trial to move forward. Second, there was no question defendant was in the house or vehicle, so there was no reason to dispute that the DNA was defendant's. Confronted with what would have inevitably been unfavorable testimony from an expert laboratory analyst, defense counsel permitted its admission, which allowed the defense to portray an air of confidence and prevented an additional prosecution witness to testify at trial. See *State v Davis*, 116 Ohio St 3d 404, 450-451; 880 NE2d 31 (2008). This strategic decision was not unreasonable. Indeed, in light of the sheer volume of evidence against defendant, there is no indication that defense counsel's failure to challenge the DNA evidence prejudiced the outcome of the trial.

Accordingly, we conclude that defendant has failed to show any mistakes in the record that constitute ineffective assistance of counsel. *Mack*, 265 Mich App at 125.

Defendant next argues that his due process rights were violated because the trial court empaneled an anonymous jury by referring to jurors only by their juror number. Because the

---

[2] Furthermore, the date of the special pretrial hearing was April 29, 2014. The reports that were entered were dated March 5, 2014 and March 27, 2014, and defendant does not argue that he was unaware of these reports or their contents. Given their dates, the reports that were entered could not have been the DNA reports on which the prosecution wanted to hold up trial. Rather, the trial testimony makes clear that these reports only determined that the DNA in the car, on the sidewalk, and in the house were from the same person, and that DNA also matched a profile in CODIS linked to a "Christopher Donald Todd," which was the same name as defendant. The DNA tests on which the prosecutor was waiting were to determine whether a swab taken from defendant matched that DNA—i.e. was defendant the same Christopher Donald Todd as was found in CODIS. Under these circumstances, defendant's stipulation that it was his DNA found in the house necessarily meant that it was his DNA found in the car and on the street because the admitted report provided that all of the swabs from different locations had the same DNA.

issue is unpreserved, this court's review is for plain error affecting defendant's substantial rights. *People v Fackelman*, 489 Mich 515, 537; 802 NW2d 552 (2011).

"An 'anonymous jury' is one in which certain information is withheld from the parties, presumably for the safety of the jurors or to prevent harassment by the public." *People v Williams*, 241 Mich App 519, 522; 616 NW2d 710 (2000). However, the reference to jurors at trial by number rather than by name does not constitute an anonymous jury. *Id.* at 523.

Defendant references several cases from foreign jurisdictions, but this Court has previously considered those cases and determined that *Williams* was not wrongly decided. *People v Hanks*, 276 Mich App 91, 95; 740 NW2d 530 (2007). Although defendant cites two newer cases in his request that we find *Hanks* was wrongly decided, the remedy suggested in those cases is that the trial court should explain that reference to jurors by number rather than name was general practice. Our review of the record shows that the trial court did precisely that.

Finally, defendant argues that his sentence floor was unconstitutionally influenced by judicial fact-finding. Even though defense counsel on appeal challenged the scoring of the guidelines on *Alleyne*[3] grounds, because this challenge was not made at the time of sentencing, the issue is unpreserved. *People v Lockridge*, 498 Mich 358, 365; ___ NW2d ___ (2015). Unpreserved errors are reviewed for plain error affecting defendant's substantial rights. *Id*. at 392.

Defendant argues that he is entitled to resentencing because his OV scores were determined by judicial fact-finding. Where facts admitted by the defendant or found by the jury "were sufficient to assess the minimum number of OV points necessary for defendant's score to fall in the cell of the sentencing grid under which he or she was sentenced," a defendant did not suffer any prejudice and "there is no plain error and no further inquiry is required." *Id*. at 394. However, where the facts found by the jury were insufficient to assess the minimum number of OV points in the sentencing grid, "an unconstitutional constraint actually impaired the defendant's Sixth Amendment right," and in the absence of an upward departure, defendants "who can demonstrate that their guidelines minimum sentence range was actually constrained by the violation of the Sixth Amendment . . . can establish a threshold showing of the potential for plain error sufficient to warrant a remand to the trial court for further inquiry." *Id*. at 395.

OV 1 was scored at 15 points for "a firearm was pointed at or toward a victim . . . ." MCL 777.31(1)(c). No judicial fact-finding occurred in the scoring of this variable because defendant himself testified that "I pulled out a handgun and I told him that I wanted the jewelry and the money." The same testimony also supports the score for OV 2, which was scored five points for "[t]he offender possessed or used a pistol . . . ." MCL 777.32(1)(d).

OV 3, MCL 777.33, is scored for physical injury to a victim. Here, 10 points were scored for "[b]odily injury requiring medical treatment occurred to a victim." MCL 777.33(1)(d). Whether these facts were found by the jury or admitted by defendant is a closer question. Actual

---

[3] *Alleyne v United States*, 570 US ___; 133 S Ct 2151; 186 L Ed 2d 314 (2013).

injury is not an element of any of defendant's convictions. See *People v Dillard*, 303 Mich App 372, 378; 845 NW2d 518 (2013) (explaining that a defendant's actions can provide circumstantial evidence of his intent to commit great bodily harm, and that "it is not necessary for any actual injury to occur."). Thus, if OV 3 is scored solely on James's injuries, such a score involved judicial fact-finding.

However, when OV 3 is scored for defendant's injuries, a score of 25 points is permitted. MCL 777.33(1)(c) ("Life threatening or permanent incapacitating injury occurred to a victim"). In *People v Laidler*, 491 Mich 339; 817 NW2d 517 (2012), our Supreme Court determined that, for purposes of OV 3, a coperpetrator could be a victim. The Court noted that OV 3 had no definition of victim and concluded, for purposes of OV 3 only, that "a 'victim' is any person who is harmed by the defendant's criminal actions." *Id.* at 348. The Court further noted its belief that the definition of victim "does not limit the source of harm and does not preclude self-inflicted harm." *Id.* at 348 n 5. Finally, the Court expressly stated that the statute's language made clear that "offenders" and "victims" are not mutually exclusive. *Id.* at 351.

Defendant's testimony is sufficient to uphold the score of 10 points. He testified that he was shot in the wrist and twice in the chest around his heart. He testified that blood was "squirting" from his wrist and "gushing" out of his chest, and blood was filling up his lungs; "I was basically drowning in my own blood." Defendant testified that one bullet went completely through him and one shattered one of his ribs, which "exploded and fragmented into [his] lungs," and he had to have the upper lobe of his left lung removed. His arm was broken, there were muscles torn, arm ligaments and tendons were damaged, and the bullet lodged into the outside bone of his arm. Defendant testified that it took a couple of months before he could pick up something simple and that it "still hurts. It's still painful."

Because defendant's admissions and uncontested OV 13 score support a total OV score of 55 points, which leaves him in the F-III range, MCL 777.62, defendant did not suffer any prejudice and "there is no plain error and no further inquiry is required." *Id*. at 395.

Affirmed.

/s/ David H. Sawyer
/s/ Mark T. Boonstra