# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

LOYD SABASTIAN DEJOHN,

      Defendant-Appellant.

UNPUBLISHED
June 19, 2018

No. 335583
Macomb Circuit Court
LC No. 2015-001414-FC

Before: MURPHY, P.J., and JANSEN and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of first-degree murder, MCL 750.316, and disinterment or mutilation of a dead body, MCL 750.160.[1] Defendant was sentenced to life imprisonment for first-degree murder, and 6 to 10 years' imprisonment for disinterment or mutilation of a dead body. We affirm in part, but reverse in part, and vacate defendant's conviction under MCL 750.160. Further, we remand to the trial court to amend defendant's judgment of sentence to reflect that defendant's conviction under MCL 750.160 is vacated.

This case arises from the disappearance of the victim, defendant's wife. After a missing person's report was filed, the police began an investigation into her disappearance. The body of the victim was ultimately found buried on abandoned property in northern Michigan.

## I. COMPETENCY HEARING

First, defendant argues that he was denied due process when the trial court declined to adjourn the competency hearing because defendant's independent psychological evaluator failed to appear to testify. We disagree.

This Court reviews a trial court's ruling on a request for an adjournment for an abuse of discretion. *People v Coy*, 258 Mich App 1, 17; 669 NW2d 831 (2003). An abuse of discretion

---

[1] Defendant was also charged with aggravated domestic violence, MCL 750.81a(2), but the trial court granted the prosecution's request to dismiss this charge on the first day of trial.

occurs when the trial court's decision falls outside the range of reasonable and principled outcomes. *People v Yost*, 278 Mich App 341, 379; 749 NW2d 753 (2008).

Decisions whether to adjourn or continue proceedings are within the discretion of the trial court. *People v Snider*, 239 Mich App 393, 421-422; 608 NW2d 502 (2000). This Court may consider a trial court's interest in the efficient administration of justice. *People v Akins*, 259 Mich App 545, 557; 675 NW2d 863 (2003). A request for an adjournment must be based on good cause. *Coy*, 258 Mich App at 18. " 'Good cause' factors include 'whether defendant (1) asserted a constitutional right, (2) had a legitimate reason for asserting the right, (3) had been negligent, and (4) had requested previous adjournments.' " *Coy*, 258 Mich App at 18, quoting *People v Lawton*, 196 Mich App 341, 348; 492 NW2d 810 (1992). When adjournment is sought because of the unavailability of evidence or a witness, diligent efforts to produce the witness must be shown. MCR 2.503(C); *Coy*, 258 Mich App at 18. However, even if good cause and diligence are shown, the denial of adjournment by the trial court is not grounds for reversal unless the defendant was prejudiced by the abuse of discretion. *Coy*, 258 Mich App at 18-19.

We conclude that the trial court did not abuse its discretion in denying defendant's request for an adjournment of the competency hearing as defendant did not demonstrate good cause or due diligence, and likewise failed to show he was prejudiced when denied an adjournment. *Id*. Defendant asserted his constitutional right not to be tried or convicted while incompetent to stand trial, as doing so would deprive him of his due process right to a fair trial. *People v Kammeraad*, 307 Mich App 98, 137; 858 NW2d 490 (2014). This due process right is protected by MCL 330.2020(1):

> A defendant to a criminal charge shall be presumed competent to stand trial. He shall be determined incompetent to stand trial only if he is incapable because of his mental condition of understanding the nature and object of the proceedings against him or of assisting in his defense in a rational manner. The court shall determine the capacity of a defendant to assist in his defense by his ability to perform the tasks reasonably necessary for him to perform in the preparation of his defense and during his trial.

Defendant had a legitimate reason for asserting this right as MCL 330.2022(1) provides that "[a] defendant who is determined incompetent to stand trial shall not be proceeded against while he is incompetent." It was asserted through the course of obtaining defendant's independent psychiatric evaluation that defendant had a traumatic brain injury at a young age that may have affected his ability to function. Therefore, defendant properly requested an independent psychiatric evaluation aside from the competency evaluation performed by the Center for Forensic Psychiatry. Thus, the first two good cause factors were met. *Coy*, 258 Mich App at 18, quoting *Lawton*, 196 Mich App at 348.

However, defendant's first attorney, Timothy S. Barkovic, was defendant's attorney when he requested adjournment seven times over the course of eight months. Barkovic kept seeking adjournments because Dr. Gerald Shiener, who would perform the independent psychiatric evaluation, had not met with defendant, or Barkovic was not yet in receipt of Dr. Shiener's report. Barkovic put the trial court on notice of his impending withdrawal as defendant's counsel, and his wish to ensure that Dr. Shiener evaluated defendant and submitted a

report before he withdrew. However, this does not excuse Barkovic's failure to ensure that defendant was evaluated or his multiple requests for adjournments over the course of so much time. It was within the trial court's discretion to deny the request to adjourn in the interest of the efficient administration of justice after so many previous adjournments. *Akins*, 259 Mich App at 558.

Additionally, defendant's second attorney, Mark Douglas Nortley, failed to exercise due diligence in ensuring Dr. Shiener's attendance at the competency hearing. The prosecution informed the court at the competency hearing that it sent Dr. Shiener a subpoena to appear at the May 4, 2016 competency hearing the day after the last pretrial hearing on April 7, 2016. Nortley asserted at the April 7, 2016 pretrial hearing that he would follow up with Dr. Shiener, but he was not informed that Dr. Shiener could not attend until a few days before the hearing. Nortley's failure to follow up with Dr. Shiener to assure his presence at the competency hearing constitutes a lack of due diligence. The trial court did not abuse its discretion in determining that the time between the subpoena and the hearing was sufficient for Dr. Shiener to contact the court or make himself available, and it was in the interest of the efficient administration of justice to proceed. *Akins*, 259 Mich App at 557.

Regardless, defendant cannot demonstrate that he was prejudiced by the trial court's failure to adjourn the competency hearing. *Coy*, 258 Mich App at 18-19. The trial court was in receipt of Dr. Shiener's report by the pretrial hearing on April 7, 2016. Dr. Shiener did not find defendant competent to stand trial, but there were two prior evaluations authored by Dr. Jennifer Whitmore from the Center for Forensic Psychiatry indicating that defendant was competent. Therefore, the court scheduled the competency hearing.

At the competency hearing, the prosecution stipulated to Dr. Shiener's credentials and that he was an expert, stipulated to Dr. Shiener's report as a basis for his findings, and waived Dr. Shiener's presence and the prosecution's right to cross-examination. The court found that Dr. Shiener's 10-page report was sufficient for the competency hearing to proceed without Dr. Shiener present to testify. Although Dr. Whitmore testified and Dr. Shiener did not, defendant was not prejudiced as the trial court had Dr. Shiener's report. It was admitted into evidence. Furthermore, the court did not render its decision from the bench immediately following Dr. Whitmore's testimony. Rather, the court took the matter under advisement, and later issued an opinion and order. Therefore, the trial court had ample time to consider Dr. Shiener's report. The order summarizes the findings of each doctor before concluding that defendant was competent to stand trial based on "[c]redible evidence and testimony [ ] that defendant is capable of understanding the nature and object of the proceedings against him and assisting in his defense in a rational manner." Therefore, defendant was not prejudiced by the trial court's failure to adjourn the competency hearing, and defendant is not entitled to reversal.

On appeal, defendant argues that the trial court abused its discretion when it denied the adjournment because the trial court "ignored" several differences between Dr. Whitmore's evaluation of defendant and Dr. Shiener's. For example, Dr. Whitmore relied on defendant's long-term employment, but did not inquire regarding how much daily assistance defendant needed. Dr. Whitmore testified that defendant understood the trial process, but Dr. Shiener reported that defendant conflated the roles of the judge and the jury. A defendant's competency is within the discretion of the trial court. *People v Newton*, 179 Mich App 484, 488; 446 NW2d

487 (1989). Therefore, it was within the trial court's discretion to determine which factors of each doctor's testimony or report to rely on when determining defendant's competency. The trial court did not abuse its discretion in this regard.

## II. ANONYMOUS JURY

Second, defendant argues that he was denied due process when the trial court referred to the jurors by number rather than by their names throughout trial. We disagree.

Because defendant failed to object to the trial court referring to jurors by number rather than name, this unpreserved issue is reviewed for plain error. *People v Hanks*, 276 Mich App 91, 92; 740 NW2d 530 (2007). "To establish plain error requiring reversal, a defendant must demonstrate that '1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights.' " *Id*., quoting *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). To meet the third requirement, "there must be a showing of prejudice, i.e., that the error affected the outcome of the lower-court proceedings." *People v Jones*, 468 Mich 345, 356; 662 NW2d 376 (2003).

An "anonymous jury" was defined by this Court as a jury "in which certain information is withheld from the parties, presumably for the safety of the jurors or to prevent harassment by the public." *People v Williams*, 241 Mich App 519, 522; 616 NW2d 710 (2000). An anonymous jury implicates the defendant's interest in conducting a meaningful examination of the jury and maintaining the presumption of innocence. *Id*. at 522-523. A defendant's challenge to an anonymous jury may only succeed when the record indicates that withheld information precluded a meaningful voir dire, or compromised the presumption of innocence. *Id*. at 523.

In *Williams*, the trial court referred to jurors by numbers rather than by name, but the record did not indicate that personal information was withheld from the parties. *Id*. The jurors were anonymous in a literal sense, but not in a strict sense. *Id*. The key to an anonymous jury is that certain biographical information about the jurors is withheld from the parties. *Id*. The *Williams* Court determined that "anonymous jury" should be defined strictly, meaning, something more than the jurors' names is withheld from the parties. *Id*. In *Williams*, the defendant had access to the jurors' biographical information included in the juror questionnaire. *Williams*, 241 Mich App at 523-524. The record did not demonstrate that the use of numbers was unusual, the parties conducted meaningful voir dire, and the presumption of innocence was not compromised. *Id*. However, the Court cautioned trial courts of the potential for prejudice that could arise from anonymous juries, and asserted that they should only be used when "jurors' safety or freedom from undue harassment is, in fact, an issue, and, when used, appropriate safeguards should be carefully followed to assure a fair trial." *Id*. at 525.

The Court in *Hanks* also "urge[d] trial courts to advise the venire that any use of numbers in lieu of jurors' names is simply for logistical purposes and they should not in any way consider it a negative against the defendant." *Hanks*, 276 Mich App at 94. In *Hanks*, the jurors were identified by numbers, but the juror questionnaires containing biographical information were provided to the parties. *Id*. The parties conducted voir dire, and the jurors did not believe that there was significance to the use of numbers. *Id*. Therefore, the defendant did not demonstrate

-4-

that he was prevented from conducting a meaningful voir dire or that the presumption of innocence was hampered, so he did not establish a plain error affecting his substantial rights. *Id.*

In this matter, the jurors were referred to by number rather than name throughout trial. The trial court informed the jury that this was merely for logistical purposes. *Hanks*, 276 Mich App at 94. Before voir dire, the court stated:

> I'm going to ask counsel to please only refer to the jurors by their numbers or seat numbers, but not by their names. It's not very personal, but I think it runs better that way.

There is no indication that the jurors believed there was some significance to the usage of numbers rather than names. In addition, the record indicates that the parties were provided the jurors' personal information in their juror questionnaires. During voir dire, the prosecutor made the following comments indicating that he knew the names of the jurors that he was questioning:

> I won't say your name publicly. But, you know that your name is in law enforcement.
>
> *  *  *
>
> Again, I can't say your name. But, is the bakery the name of your name also?

There is no indication in the record that only the prosecutor, and not defense counsel, was in possession of the jurors' names. Defense counsel also conducted a thorough voir dire of the potential jurors.

Therefore, defendant cannot demonstrate that the two interests implicated by an anonymous jury, conducting a meaningful voir dire and compromising the presumption of innocence, were affected in this matter. *Williams*, 241 Mich App at 522. Therefore, defendant cannot demonstrate that the trial court committed a plain error affecting his substantial rights by referring to the jurors by number rather than by name. *Hanks*, 276 Mich App at 94.

On appeal, defendant argues that empaneling an anonymous jury should be considered a structural error, or that trial courts should be required to justify the use of an anonymous jury. Defendant relies on multiple out-of-jurisdiction cases to make this argument. "Although judicial decisions of foreign jurisdictions may be persuasive, they are not binding." *Hanks*, 276 Mich App at 95. Defendant relies on *State v Tucker*, 259 Wis 2d 484; 2003 WI 12; 657 NW2d 374 (2003), which held that referring to jurors by number rather than by name was an error even though the jurors' personal information was provided. The defendant in *Hanks* made the same argument relying on *Tucker*, and this Court was "not persuaded that *Williams* was wrongly decided." *Hanks*, 276 Mich App at 95.

## III. DISINTERMENT OR MUTILATION CONVICTION

Finally, defendant argues the prosecution did not present sufficient evidence from which a reasonable trier of fact could conclude that defendant had disinterred or mutilated the victim's body, in violation of MCL 750.160. We agree.

This Court will review a challenge to the sufficiency of the evidence de novo. *People v Hawkins*, 245 Mich App 439, 457; 628 NW2d 105 (2001). The evidence is reviewed "in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt." *People v Robinson*, 475 Mich 1, 5; 715 NW2d 44 (2006). It is the role of the trier of fact to weigh evidence and evaluate the credibility of witnesses. *People v Kanaan*, 278 Mich App 594, 618-619; 751 NW2d 57 (2008).

MCL 750.160 provides:

A person, not being lawfully authorized to do so, who shall willfully dig up, disinter, remove, or convey away a human body, or the remains thereof, from the place where the body may be interred or deposited, or who shall knowingly aid in such disinterment, removal, or conveying away, or who shall mutilate, deface, remove, or carry away a portion of the dead body of a person . . . shall be guilty of a felony.

After a review of the record, we conclude that the evidence in this case does not establish that defendant dug up, disinterred, removed, or conveyed the victim's body "from the place where the body may be interred or deposited." MCL 750.160. Defendant did not inter or deposit the victim's bodies. Rather, the victim was still in the home where she died when defendant loaded her into his pickup truck and drove her body up north. Defendant's actions, i.e., moving the body out of sight and into a closet until defendant could move the body up north, do not come within the purview of the statute. Further, there is nothing to suggest defendant mutilated or defaced the victim's body in any way. Accordingly, we conclude that insufficient evidence supports defendant's conviction under MCL 750.160.

Affirmed in part, reversed and vacated in part. We remand to the trial court for amendment of the judgment of sentence to reflect that defendant's conviction under MCL 750.160 is vacated. We do not retain jurisdiction.

/s/ William B. Murphy
/s/ Kathleen Jansen
/s/ Amy Ronayne Krause

-6-