PEOPLE v WILLIAMS

Docket No. 218219. Submitted May 3, 2000, at Grand Rapids. Decided
June 23, 2000, at 9:05 A.M. Leave to appeal sought.
S. L. Williams was convicted by a jury in the Kalamazoo Circuit Court,
William G. Schma, J., of two counts of delivering less than fifty
grams of methadone and one count of delivering less than fifty
grams of heroin. The defendant appealed.

The Court of Appeals *held*:

1. The trial court did not abuse its discretion in sustaining the
prosecution's challenge for cause of a prospective juror who
demonstrated bias against the use of paid informants by stating
that he would not be able to find the defendant guilty on the basis
of a paid informant's testimony.

2. The defendant's due process rights were not violated when the
trial court decided to refer to jurors by number rather than by
name. An "anonymous jury," in the strict sense of the term, was not
impaneled, given that biographical information about potential
jurors was not withheld from the parties. Even if the jury were
anonymous, the defendant's challenge would be unsuccessful, given
the lack of evidence that the defendant was prevented from con-
ducting meaningful voir dire or that the presumption of innocence
was compromised.

3. The defendant was not denied the Sixth Amendment right to
an impartial jury drawn from a fair cross section of the community
by virtue of alleged underrepresentation of African-Americans in
the venire. The defendant failed to establish that such under-
representation or exclusion of African-Americans was not limited
to his case and was general and systematic.

4. The defendant has not established a prima facie case of dis-
crimination against African-Americans in the composition of the
jury that would violate equal protection under the Fourteenth
Amendment. To make out a case of systematic discrimination, a
claimant must show that the group excluded is a recognizable, dis-
tinct class capable of being singled out for different treatment
under the laws, must prove the degree of underrepresentation by
comparing the proportion of the excluded group to the proportion
actually called to serve on the venire over a significant period, and

must show that the selection procedure is either susceptible of abuse or not racially neutral. In this case, the defendant failed to show that the system for selecting veniremen was subject to abuse or that his racial group was underrepresented over a significant period.

Affirmed.

1. JURY — CHALLENGES FOR CAUSE — BIAS — APPEAL.

The Court of Appeals reviews for abuse of discretion a trial court's ruling with respect to a challenge of a prospective juror for cause based on bias.

2. JURY — ANONYMOUS JURIES.

An anonymous jury is one in which biographical information about jurors has been withheld from the parties in a criminal trial, presumably for the safety of the jurors or to prevent harassment by the public; the use of an anonymous jury may be successfully challenged where the record reflects that the parties have had information withheld from them such that meaningful voir dire was prevented or the presumption of innocence was compromised.

3. CONSTITUTIONAL LAW — JURY — FAIR CROSS SECTION OF COMMUNITY — PRIMA FACIE CASE.

A prima facie showing that a jury was not selected from a fair cross section of the community is made where the defendant shows that the group alleged to be excluded is a distinctive group in the community, the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community, and the underrepresentation is attributable to systematic exclusion of the group in the jury selection process; African-Americans are a constitutionally cognizable group for purposes of the first requirement; the second requirement is satisfied by a showing that the group is substantially underrepresented in the jury pool; the third requirement is not satisfied with a showing of one or two incidents of a particular venire being disproportionate (US Const, Am VI).

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *James J. Gregart*, Prosecuting Attorney, and *Frank J. Machnik*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Fred E. Bell*), for the defendant on appeal.

Before: BANDSTRA, C.J., and JANSEN and WHITBECK, JJ.

BANDSTRA, C.J. Defendant appeals as of right from his conviction in a jury trial of two counts of delivery of methadone in an amount less than fifty grams, MCL 333.7401(2)(a)(iv); MSA 14.15(7401)(2)(a)(iv), and one count of delivery of heroin in an amount less than fifty grams, MCL 333.7401(2)(a)(iv); MSA 14.15(7401)(2)(a)(iv). We affirm.

This case arises out of several undercover drug sales that occurred in April, May, and June 1997. A recovering heroin addict working with the Southwest Enforcement Team, an undercover narcotics unit, testified as the prosecution's chief witness that he purchased methadone and heroin from defendant on various occasions.

Defendant argues that the court erred in sustaining the prosecutor's challenge of a venireman for cause on the basis that the venireman was biased against the use of a paid informant. We review for abuse of discretion a trial court's rulings on challenges for cause based on bias. *People v Roupe*, 150 Mich App 469, 474; 389 NW2d 449 (1986). MCR 2.511(D)(3), (4), and (5) provide in pertinent part that a venireman may be excused for cause based on a demonstrated bias for or against a party, if the venireman shows a state of mind that will prevent the juror from rendering a just verdict, or if the venireman has opinions that would improperly influence the juror's verdict.

Defendant argues that the venireman exhibited mere skepticism rather than bias against the paid

informant witness, and that such skepticism did not constitute cause for purposes of dismissal. We disagree. The venireman unequivocally stated that he would not be able to find defendant guilty on the basis of a paid informant's testimony. This Court defers to the trial court's superior ability to assess from a venireman's demeanor whether the person would be impartial. *Butler v DAIIE*, 121 Mich App 727, 746; 329 NW2d 781 (1982). The court did not abuse its discretion by excusing the venireman for cause.

Next, defendant argues that the court violated his due process rights by impaneling an "anonymous jury." We disagree. The court's decision to refer to jurors by number rather than name is a decision concerning the conduct of voir dire, which we will review for abuse of discretion. See *People v Daniels*, 192 Mich App 658, 666; 482 NW2d 176 (1992).

An "anonymous jury" is one in which certain information is withheld from the parties, presumably for the safety of the jurors or to prevent harassment by the public. Anno: *Propriety of using anonymous juries in state criminal cases*, 60 ALR5th 39, § 2[a], p 47. The withholding of information from parties was first used in federal courts, primarily as a protection against dangerous individuals. See *United States v Barnes*, 604 F2d 121, 140-141 (CA 2, 1979). Use of this procedure in state courts began in the past decade. 60 ALR5th 39, *supra*. The courts have recognized that the use of an "anonymous jury" may promote the safety of prospective jurors, but at a potential expense to two interests of the defendant: (1) the defendant's interest in being able to conduct a meaningful examination of the jury and (2) the defendant's

interest in maintaining the presumption of innocence. 60 ALR5th 39, § 4, pp 52-54; see also anno: *Propriety of, and procedure for, ordering names and identities of jurors to be withheld from accused in federal criminal trial—"anonymous juries,"* 93 ALR Fed 135, § 2[a], p 139. In order to successfully challenge the use of an "anonymous jury," the record must reflect that the parties have had information withheld from them, thus preventing meaningful voir dire, or that the presumption of innocence has been compromised. See, e.g., *People v Phillips*, 56 Cal App 4th 1307, 1310; 66 Cal Rptr 2d 380 (1997); *State v Bowles*, 530 NW2d 521, 529-530 (Minn, 1995).

The record in the present case does not support the conclusion that an "anonymous jury," in the strict sense of the term, was impaneled. As previously mentioned, the practice of impaneling an "anonymous jury" is an extreme measure, in which "certain biographical information about potential jurors" is withheld, even from the parties. *United States v Branch*, 91 F3d 699, 723 (CA 5, 1996). By contrast, in this case, jurors were merely referred to at trial by number rather than by name. There is nothing in the record to support the conclusion that any information was actually withheld from the parties. At most, the names of the jurors were replaced by numbers. Just as in *Branch*, "[t]he jurors here were not 'anonymous' except in the most literal sense"; that is, their names were not read into the record. *Id.*

Defendant admitted on the record that he had access to the jurors' biographical information, as contained in the juror questionnaires. See MCR 2.510. Furthermore, the voir dire conducted by both parties demonstrates that that information was not withheld

from the parties.[1] There is nothing to indicate that defendant's ability to effectively examine the venire was compromised in any way.

In addition, there is nothing in the record to indicate that the use of numbers undermined the presumption of innocence. There is no suggestion that jurors understood the use of numbers rather than names to be anything out of the ordinary. Thus, there was no suggestion that defendant's trial was being handled in a special way, with the resulting implication that he was generally dangerous or guilty as charged. Other state appellate courts have declined to review claims of prejudice in the withholding of jurors' names in the absence of any evidence in the record of prejudice. For instance, in *Bowles, supra* at 529-530, the Minnesota Supreme Court discussed the issue of prejudice:

> Like the presence of uniformed and armed security personnel at trial that was at issue in *Holbrook* [*v Flynn,* 475 US 560; 106 S Ct 1340; 89 L Ed 2d 525 (1986)], the use of an anonymous jury "need not be interpreted [by jurors] as a sign that [the defendant] is particularly dangerous or culpable." 475 US at 569; 106 S Ct at 1346. Rather, jurors are as likely to conclude their anonymity is designed to protect them from media or public pressures. Indeed, jurors who are unaware that anonymity is unusual are likely to draw no conclusions at all from the practice. We conclude that the use of an anonymous jury is not an inherently prejudicial practice.

---

[1] The prosecution has attached to its brief affidavits of both the prosecutor and the defense counsel indicating that they had access to juror names and biographical information. However, parties cannot enlarge the record on appeal by the use of affidavits. *People v Brown,* 119 Mich App 656, 665; 326 NW2d 834 (1982).

Similarly, we see no reason to presume prejudice from the trial court's actions here.

We conclude that, under the facts of this case, defendant's due process rights were not violated by using juror numbers instead of names at trial. However, we caution the trial courts about the potential for prejudice arising from the use of anonymous juries. The procedure should be employed only when jurors' safety or freedom from undue harassment is, in fact, an issue, and, when used, appropriate safeguards should be carefully followed to assure a fair trial.

Finally, defendant argues that he was denied the right to an impartial jury drawn from a fair cross section of the community.[2] We disagree. "Questions of systematic exclusion of minorities from venires are reviewed de novo by this Court." *People v Hubbard (After Remand)*, 217 Mich App 459, 472; 552 NW2d 493 (1996). To determine whether a prima facie violation of the fair-cross-section requirement of US Const, Am VI has occurred, the court must find the following: (1) the group alleged to be excluded must be a distinctive group in the community; (2) the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3)

---

[2] Defendant also states, without any explanation whatsoever, that he was denied the effective assistance of counsel. We interpret defendant's claim of ineffective assistance to be that, assuming that his right to a jury drawn from a fair cross section of the community was violated, counsel was unable, because of the unfairly drawn venire, to provide effective representation regardless of his actual competence. See *People v Mitchell*, 454 Mich 145, 154-155; 560 NW2d 600 (1997). Our disposition of defendant's fair-cross-section claim disposes of his claim of ineffective assistance.

the underrepresentation is due to systematic exclusion of the group in the jury-selection process. *Duren v Missouri*, 439 US 357, 364; 99 S Ct 664; 58 L Ed 2d 579 (1979); *Hubbard, supra* at 473.

Defendant satisfies the first prong of the *Duren/Hubbard* test. "African-Americans are considered a constitutionally cognizable group for Sixth Amendment fair-cross-section purposes." *Hubbard, supra* at 473. However, neither the second nor third prong is satisfied. "[T]he second prong is satisfied where it has been shown that a distinctive group is substantially underrepresented in the jury pool." *Id.* at 474. However, like the defendant in *People v Howard*, 226 Mich App 528, 533; 575 NW2d 16 (1997), this defendant asserts that African-Americans were underrepresented in his particular array, but presents no evidence on jury venires in general. "Merely showing one case of alleged underrepresentation does not rise to a 'general' underrepresentation that is required for establishing a prima facie case." *Id.*

Even if defendant had satisfied the second prong of the test, he has clearly failed to satisfy the third prong, which requires him to show that any underrepresentation is due to systematic exclusion. *Hubbard, supra* at 481. Defendant simply argues that "this prong will be met if a hearing is held on remand," and points out that "of the 50 prospective jurors, only two were African-American," while "nine percent of Kalamazoo County is African-American." "[I]t is well settled that systematic exclusion cannot be shown by one or two incidents of a particular venire being disproportionate." *People v Flowers*, 222 Mich App 732, 737; 565 NW2d 12 (1997). Furthermore, "[w]hile a criminal defendant is entitled to an impartial jury

drawn from a fair cross section of the community, he is not entitled to a petit jury that exactly mirrors the community," and a "bald assertion" that systematic exclusion must have occurred is insufficient to make out a claim of systematic exclusion. *Id.* at 736-737. Defendant has the burden of demonstrating a problem inherent within the selection process that results in systematic exclusion.[3] Defendant has failed to do so.[4]

Defendant makes an alternative Fourteenth Amendment equal protection argument, claiming that he has shown a prima facie case of discrimination against African-Americans. Defendant cites *Jefferson v Morgan*, 962 F2d 1185 (CA 6, 1992), and *Alston v Manson*, 791 F2d 255 (CA 2, 1986), two cases challenging the composition of state grand juries,[5] in support of his contention. To make out a case for systematic discrimination, a claimant must (1) show that the group excluded is a recognizable, distinct class capable of being singled out for different treatment under the laws, (2) prove the degree of underrepresentation by comparing the proportion of the excluded group in

---

[3] We note that we concluded in *Hubbard* that "the Kalamazoo County jury array procedure was systemically flawed between the mid-1980s and 1992." *Id.* at 482. However, that process was changed in orde· to alleviate the problem. *Id.* at 470-471.

[4] To the extent that defendant is asking that the case now be remanded to make a record, we note that MCR 7.211 provides a means for requesting a hearing in the trial court to develop evidence. Within the time for filing a brief, an appellant may move to remand the case when development of a factual record is required for appellate consideration of an issue. MCR 7.211(C)(1)(a)(ii). Any such motion must be supported by an affidavit or offer of proof regarding the facts to be established. MCR 7.211(C)(1)(a)(ii). Defendant did not avail himself of this procedure.

[5] We will assume without deciding that these cases also provide the framework for making out an equal protection challenge to the composition of petit juries.

the total population to the proportion actually called to serve on the venire over a significant period, and (3) show that the selection procedure is either susceptible of abuse or not racially neutral. *Casteneda v Partida*, 430 US 482, 494; 97 S Ct 1272; 51 L Ed 2d 498 (1977). Just as with defendant's Sixth Amendment claim, defendant has failed to make out a prima facie case under the Fourteenth Amendment. Defendant failed to show either that the system for selecting veniremen was subject to abuse or that his racial group was underrepresented over a significant period.

We affirm.