# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

AMIR AMON JARDEN,

        Defendant-Appellant.

UNPUBLISHED
March 7, 2017

No. 329148
Crawford Circuit Court
LC No. 15-003828-FH

Before: RONAYNE KRAUSE, P.J., and O'CONNELL and METER, JJ.

PER CURIAM.

Defendant appeals as of right his conviction following a jury trial of four counts of aiding and abetting identity theft, MCL 445.65 and MCL 767.39. Defendant was sentenced to 180 days' incarceration for each conviction, to be served concurrently, and 24 months' probation. Defendant's convictions arose out of his participation with Douglas Adair and Henry Flakes in a scheme to withdraw money from a bank account. Flakes was also convicted by a jury in a separate trial and appeals separately in Docket No. 331306; Adair was convicted following a guilty plea that entailed his testimony at both trials, and he has not appealed. We affirm.

Adair testified that his involvement with the crimes began when Flakes approached him and asked if he would like to make some money by going to a bank for a woman who was not getting along with her husband and wanted to get her money away from the husband. Flakes provided Adair with a driver's license bearing Adair's picture but other personal information belonging to one of the victims. Defendant drove defendant and Adair to four branches of the same bank, where Adair went in and withdrew money. They were able to remove over $16,000 from the victims' bank account between the first three branches, but Adair believed the teller at the fourth branch was suspicious, so he fled, leaving the fake ID behind and without any additional money. Adair testified that he received $1,000 for his involvement, and the rest of the money went to Flakes. Adair described Flakes as "sort of like the instructor" and defendant as "basically just driving." However, Adair testified that defendant gave him a filled-out withdrawal slip at two of the branches, and Adair believed that defendant had filled them out.

Defendant argues that his convictions lack sufficient evidence and are against the great weight of the evidence. A challenge to the sufficiency of the evidence following a jury trial is reviewed de novo. *People v Harverson*, 291 Mich App 171, 177; 804 NW2d 757 (2010). "[W]hen determining whether sufficient evidence has been presented to sustain a conviction, a

court must view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v Wolfe*, 440 Mich 508, 515-516; 489 NW2d 748, amended on other grounds 441 Mich 1201 (1992). An unpreserved argument that a verdict in a criminal trial is against the great weight of the evidence is reviewed for plain error that affected the defendant's substantial rights. *People v Cameron*, 291 Mich App 599, 617-618; 806 NW2d 371 (2011). Defendant argues that there was no direct evidence that he even had any knowledge that Adair and Flakes were involved in a criminal enterprise, any circumstantial evidence was *de minimus*, and Adair was completely untrustworthy and in any event could only speculate as to defendant's involvement.

Regarding Adair's credibility, defendant thoroughly cross-examined him, and Adair openly disclosed that he had lost track of how many theft convictions he had, and he was refreshingly candid that he was "really prostituting [him]self trying to get [him]self a deal" and would "tell [the prosecutor] anything," but indicated that there were different degrees of dishonesty, and insisted that he would be "open." The jury was completely aware of the extent to which Adair might be an unreliable witness. Because Adair's testimony did not clearly defy reason or reality, the courts simply may not intrude upon the jury's assessment of his credibility. See *People v Lemmon*, 456 Mich 625, 643–644; 576 NW2d 129 (1998).

"Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v Allen*, 201 Mich App 98, 100; 505 NW2d 869 (1993). Defendant correctly points out that his fingerprint on a recovered withdrawal slip is not itself proof of criminal involvement. However, his fingerprints were found on two different withdrawal slips from two different days at two different banks. He himself admitted that he had been paid $100 to drive and that it seemed "odd" to drive long distances to the banks when there was a local branch. Furthermore, Adair testified that Flakes gave him the fake ID before entering each bank, and Adair returned it afterwards along with the withdrawn money. Although there was no evidence that defendant handled any of the withdrawn money, Adair's testimony indicates that a very substantial amount of cash changed hands in the car in defendant's presence, and when Adair returned from the final branch after noticing the teller becoming suspicious, defendant "took off from there pretty quick."

To prove a charge of identity theft, aiding or abetting, the prosecution must prove each of the following three elements beyond a reasonable doubt: (1) the crime was actually committed, (2) the defendant in some way assisted in the commission thereof, and (3) the defendant intended for the crime to occur or knew that the person committing the crime intended for it to occur at when the defendant provided the assistance. *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010). Taken together, all of the pieces of circumstantial evidence are sufficient to generate a reasonable inference that defendant was at least aware that Flakes and Adair were committing identity theft and that he was providing assistance by driving them, if not more. The evidence is sufficient to support defendant's convictions. The same evidence and reasoning establishes that defendant's convictions are likewise not against the great weight of the evidence.

Defendant next argues that his trial was tainted by biased jurors, some of whom defendant was able to remove by exercising peremptory challenges, but two of whom the trial court refused, despite defendant's request, to remove for cause. We review "for abuse of

discretion a trial court's rulings on challenges for cause based on bias." *People v Williams*, 241 Mich App 519, 521; 616 NW2d 710 (2000). We do find the jurors' statements troubling, however, even if the trial court should have removed the jurors, failure to do so does not invalidate the jury's verdict unless, *inter alia,* defendant "demonstrates actual prejudice to his cause." MCL 600.1354(1). We are not persuaded that defendant has done so.

During voir dire, numerous potential jurors admitted that they knew the victims or other witnesses. The two jurors defendant was not able to remove with peremptory challenges both opined that they thought of the victims as "very good people" or "very honest people," and they would likely believe the victims' testimony. However, after defendant's challenge for cause, the trial court directly asked the jurors whether they would be capable of disbelieving the victims if something they said did not make sense in light of the other evidence in the case. No verbal response was transcribed, but the trial court subsequently denied the challenge. We presume the trial court would not have done so had any of the jurors answered in the negative, and even if the trial court had, we presume defense counsel would have made some kind of record. Therefore, while we have some doubt as to the wisdom of allowing the jurors to remain, it appears that they did agree that they would not necessarily believe the victims under all circumstances.

Furthermore, the trial court instructed the impaneled jurors after the close of proofs that they "should not use any personal knowledge you may have about a place, person, or event. To repeat once more, you must decide this case based only on the evidence admitted during the trial." "It is well established that jurors are presumed to follow their instructions." *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998). Most significantly, the victims had no idea who the perpetrators of the identity theft were, and defendant's defense was never that the crimes did not occur. Rather, defendant's entire defense was that he was not involved, or at least not intentionally involved, something the victims' testimony did not in any way touch upon beyond stating that they did not know defendant. Consequently, even if the jurors did afford the victims any amount of improperly enhanced credibility, that would have had no effect on defendant's case. Propriety of the two jurors remaining on the jury aside, defendant has demonstrated no prejudice. 600.1354(1).

Defendant also argues that another juror should not have been impaneled because she was not "a resident in the county for which the person is selected." MCL 600.1307(a)(1)(a). MCL 600.1300 *et seq.*, which sets the requirements to serve on a jury, among other things, does not define "residency." The juror testified that she and her husband chose to live in a camper rather than a house, and they lived on land they owned in Crawford County for four months out of the year and traveled south for the rest of it. Although she testified that she did "not really" consider the land in Crawford County to be her "home," that was where she received her mail, and her driver's license was from Michigan. Furthermore, her testimony suggested that the time she spent in Crawford County was consistent and predictable.

We note that the juror's testimony indicated that when she and her husband are not in Michigan, they do *not* have a consistent alternate location. She indicated that they spend more time out of Michigan than in Michigan, but despite "not really" considering her land in Crawford County to be her home, it is as close to a "base of operations" as she and her husband appeared to have. Given these circumstances, especially given that defendant has failed to show how the he was prejudiced by having this particular juror on his jury, we find the court did not abuse its

discretion in declining to dismiss this juror for cause. See *People v Johnson*, 81 Mich 573, 576; 45 NW 1119 (1890) (reasoning that "residence is so much a matter of intention that it is difficult to prove an intention contrary to that alleged by the person, and we think we must, as the circuit judge did, give credence to the oath of the juror upon that subject"); and *People v Morgan*, 144 Mich App 399, 403; 375 NW2d 757 (1985) (concluding that because the jurors were electors in the county where the trial took place, and because the defendant failed to show that the impaneling of the jurors resulted in prejudice, the decision by the trial court was not error warranting reversal).

We decline to consider defendant's unpreserved argument that he received ineffective assistance of counsel because counsel failed to request additional peremptory challenges to remove the three jurors discussed. As noted, defendant has not established prejudice, nor, based on our reading of the record, do we perceive how he could. All other things being equal, a claim of ineffective assistance of counsel does not warrant reversal in the absence of prejudice. See *People v LeBlanc*, 465 Mich 575, 578; 640 NW2d 246 (2002). Because defendant has shown none, this issue would not bring him relief in any event.

Affirmed.

/s/ Amy Ronayne Krause
/s/ Peter D. O'Connell
/s/ Patrick M. Meter