*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MICHAEL WILLIAM GOFF,

        Defendant-Appellant.

UNPUBLISHED
October 15, 2025
9:36 AM

No. 369902
Ingham Circuit Court
LC No. 18-000929-FC

Before: GADOLA, C.J., and MURRAY and YATES, JJ.

PER CURIAM.

Defendant, Michael William Goff, was tried twice for sexually assaulting a child. The jury at his first trial convicted him of two counts of second-degree criminal sexual conduct (CSC-II),[1] MCL 750.520c(1)(a), but the jury could not reach a unanimous verdict on any of the three counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(2)(a) (sexual penetration of victim under 13 years of age). As a result, defendant was tried again on the three CSC-I charges, and the jury convicted defendant of all three counts of CSC-I for the acts of fellatio, penetration of the anal opening with defendant's penis, and digital penetration of the genital opening. The trial court then sentenced defendant to serve consecutive prison terms of 25 to 75 years for each of his convictions. On appeal, defendant challenges the anonymity of the jurors in his trial, the jury verdict form, and the trial court's imposition of three consecutive sentences. We affirm defendant's convictions, but we vacate the consecutive sentences imposed by the trial court and remand for resentencing.

## I. FACTUAL BACKGROUND

Defendant is the father of the victim, TB, who was 11 years old when she disclosed that he had been sexually abusing her since she was 5 years old. TB testified at trial about eight incidents of sexual abuse. First, when TB was 5 years old, defendant and TB were watching television when

---

[1] This Court affirmed those two convictions and the resulting sentences for those offenses. *People v Goff*, unpublished per curiam opinion of the Court of Appeals, issued May 30, 2024 (Docket No. 364331).

defendant told her to take off her clothes and lie on the bed. Fearful that defendant would hurt her, TB complied, and defendant digitally penetrated her vagina. Defendant then instructed TB to get on her hands and knees on the bed, and defendant penetrated her anus with his penis. Second, as TB was playing a game on defendant's computer, defendant took the computer, began watching a pornographic video, and told TB to take off her clothes and get on the bed. Defendant instructed TB to watch the video, and told her he wanted to recreate it, culminating in defendant telling TB to perform fellatio on him. Defendant directed her not to tell anyone or else she "would be 6 feet underground." During the third incident, TB was asleep when defendant woke her up and had his exposed penis in front of her face. Defendant told TB to perform fellatio on him, which she did because, if she complied, she knew he would leave her alone. On the fourth occasion, defendant told TB to take off her clothes, removed his clothing, and rubbed his penis against TB's breasts. During the fifth incident, defendant tried to penetrate TB's vagina with his penis, but it did not "fit all the way in," so defendant digitally penetrated her instead. After that, defendant began playing a pornographic video on his computer and instructed TB to imitate the video by performing fellatio on him. On the sixth occasion, defendant texted TB the phrase "green marker," which was a signal that he wanted her to come to him, and defendant rubbed his penis against her vagina. During the seventh incident, defendant promised TB a new cell phone in exchange for fellatio. Additionally, TB testified about an eighth incident when defendant sexually assaulted her, and then she retreated to a spare bedroom, locked the door, and disclosed in a text message to her mother what had been happening.

TB testified that she often could not sleep at night, but she would fall asleep on the school bus in the morning because she felt safer sleeping on the bus than in her bed. During the assaults, TB would count the green dots on the ceiling to take her mind off the pain her father was causing. She testified that the sexual assaults by defendant occurred, on average, four times each week. TB also stated that she had suicidal thoughts because of the sexual assaults.

Defendant was charged with three counts of CSC-I and two counts of CSC-II. At his first trial in 2022, defendant was convicted of both counts of CSC-II, but the jury was hung on the three counts of CSC-I. At the retrial in 2023 on the three CSC-I charges, the jury convicted defendant on all three charges.[2] The trial court sentenced defendant to serve consecutive prison terms of 25 to 75 years for the three CSC-I convictions. Defendant now appeals of right.

## II. LEGAL ANALYSIS

On appeal, defendant raises issues concerning jury selection, the jury verdict form, and his consecutive sentences. First, defendant contends that the practice of referring to prospective jurors by numbers, rather than by names, violated his due-process rights. Second, defendant asserts that the jury verdict form omitted an element of CSC-I, and his trial counsel was ineffective for failing

---

[2] We note that the charges of CSC-I at defendant's first trial were for the acts of fellatio, penetration of the *genital* opening with defendant's penis, and digital penetration of the genital opening, but the verdict form at defendant's second trial resulted in CSC-I convictions for fellatio, penetration of TB's *anal* opening with defendant's penis, and digital penetration of the genital opening.

to object to that omission. Third, defendant challenges the trial court's imposition of consecutive sentences for the three CSC-I convictions. We shall address these arguments in turn.

## A. JURY ANONYMITY

Defendant claims that the trial court violated his due-process rights by using juror numbers, rather than names, to refer to the jurors without giving a cautionary instruction that such a practice is customary and not a reflection of defendant's guilt or dangerousness. Defendant did not object to the use of an anonymous jury, so the issue is unpreserved and subject only to plain-error review. *People v Hanks*, 276 Mich App 91, 92; 740 NW2d 530 (2007). To establish plain error requiring reversal, a defendant must demonstrate that "1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. (quotation marks and citation omitted). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error 'seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings' independent of the defendant's innocence." *Id*. (quotation marks and citation omitted, alteration in original).

A jury may be impaneled anonymously to protect jurors from danger or harassment, and, in the strictest sense, involves withholding biographical information about the prospective jurors, even from the parties. *People v Williams*, 241 Mich App 519, 522-523; 616 NW2d 710 (2000). However, that can jeopardize a defendant's ability to conduct voir dire or undermine a defendant's presumption of innocence. *Id*. "In order to successfully challenge the use of an 'anonymous jury,' the record must reflect that the parties have had information withheld from them, thus preventing meaningful voir dire, or that the presumption of innocence has been compromised." *Id*. at 523. A trial court may refer to the jurors by number, rather than by name, while still providing biographical information to a defendant, which does not constitute an " 'anonymous jury,' in the strict sense of the term . . . ." *Id*. This Court has "strongly urge[d] trial courts to advise the [jury] venire that any use of numbers in lieu of jurors' names is simply for logistical purposes and they should not in any way consider it a negative against the defendant." *Hanks*, 276 Mich App at 94. Where the record does not reflect that a defendant's ability to effectively examine the jury venire was compromised, and where the record does not indicate the use of juror numbers instead of juror names undermined the presumption of innocence, there is no error. *Williams*, 241 Mich App at 523-524.

Here, the trial court stated that, by order of the court, prospective jurors would be identified by numbers "for [their] comfort and [their] feel of safety always." The trial court did not instruct the prospective jurors that they should not consider that practice a negative reflection on defendant. The record does not reveal whether the prospective jurors' biographical information was withheld from the parties. Defendant does not allege that he did not receive biographical information about the jurors, or that he was unable to conduct meaningful voir dire. Defendant instead contends that the jurors were prejudiced by the lack of a cautionary instruction that the use of juror numbers was not a reflection of defendant's guilt or innocence. In *Hanks*, 276 Mich App at 94, this Court only recommended that a cautionary instruction be provided. Significantly, the *Hanks* Court concluded that the use of juror numbers without a cautionary instruction did not constitute plain error. *Hanks*, 276 Mich App at 94. Here, nothing suggests that the use of juror numbers prejudiced defendant or led to an inference of guilt, so defendant has not satisfied the plain-error standard.

## B. VERDICT FORM

Defendant next asserts that his due-process right to a properly-instructed jury was violated because the verdict form did not state that the jury had to find that the victim was younger than 13 years old and that defendant was 17 years of age or older at the time of each crime. He also argues that his trial counsel was ineffective for failing to object to the flawed verdict form. We agree that defendant's verdict form was erroneous, but we conclude that that did not prejudice defendant.

The verdict form did not include an element of CSC-I, i.e., that the jury must find that TB was less than 13 years of age and defendant was 17 years of age or older at the time of the offenses. But the trial court verbally instructed the jury during final instructions that it needed to make such a finding for each count of CSC-I. Moreover, defendant did not object to the verdict form, so his unpreserved claim of instructional error is reviewed for plain error. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004). "The verdict form is treated as, essentially, part of the package of jury instructions." *People v Eisen*, 296 Mich App 326, 330; 820 NW2d 229 (2012). A criminal defendant has a constitutional right to have a jury determine guilt "from its consideration of every essential element of the charged offense." *People v Kowalski*, 489 Mich 488, 501; 803 NW2d 200 (2011). Therefore, a defendant is "entitled to have all the elements of the crime submitted to the jury in a charge which is neither erroneous nor misleading . . . ." *Id*. (quotation marks and citations omitted, alteration incorporated). But "[i]nstructional errors that omit an element of an offense, or otherwise misinform the jury of an offense's elements, do not necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." *Id*. (quotation marks, citation, and emphasis omitted). Also, "[j]ury instructions are to be read as a whole rather than extracted piecemeal to establish error." *People v Wade*, 283 Mich App 462, 464; 711 NW2d 447 (2009).

The elements of CSC-I under MCL 750.520b(2)(b) require determinations about the ages of the victim and the offender at the time of the conduct, and the jury must be informed that it must find those elements beyond a reasonable doubt. *Eisen*, 296 Mich App at 330. Although it is error for a trial court not to include the elements of age in its jury instructions, that error can be rectified by the inclusion of those elements on the verdict form. *Id*. at 330-331. Similarly, it was error for the trial court not to include the ages of defendant and the victim on the verdict form, but that error was rectified when the court told the jurors that the ages of the two were facts that had to be proven beyond a reasonable doubt for each count. Jurors "are presumed to follow their instructions," and "jury instructions are presumed to cure most errors." *People v Zitka*, 335 Mich App 324, 348; 966 NW2d 786 (2020) (quotation marks and citation omitted). During the trial, it was undisputed and confirmed by defendant's testimony that TB was less than 13 years of age when she disclosed the sexual abuse, and that defendant was 22 years old when TB was born. Although the verdict form's omission constitutes plain error, that error did not affect defendant's substantial rights, so he cannot satisfy the plain-error standard.

With regard to defendant's ineffective assistance of counsel claim predicated on the flawed verdict form, defendant's attorney may be deemed ineffective only if "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that [the] outcome would have been different." *People v Yeager*, 511 Mich 478, 488; 999 NW2d 490 (2023) (quotation marks and citation omitted). The failure to object to plainly erroneous jury instructions can fall below an objective standard of reasonableness.

*Eisen*, 296 Mich App at 330. Here, because the verdict form was plainly erroneous, trial counsel's representation fell below an objective standard of reasonableness insofar as counsel failed to object to the verdict form. But defense counsel's failure to object to the error in the verdict form did not create a reasonable probability that the outcome of the trial would have been different if defense counsel had made a timely objection to the verdict form. Thus, defendant is not entitled to a new trial on the basis of ineffective assistance of counsel.

## C. CONSECUTIVE SENTENCES

Defendant next argues that the trial court erred by imposing consecutive sentences, which were not authorized by any statute. Specifically, defendant contends that the CSC-I convictions did not arise of out of the same transaction, and the trial court did not provide a proper justification for the consecutive sentences. The prosecution concedes that just two of defendant's three CSC-I convictions are eligible for consecutive sentencing, while the sentence for the third must be served concurrently.[3]

A trial court's "decision to impose a consecutive sentence when not mandated by statute is reviewable for an abuse of discretion," *People v Norfleet*, 317 Mich App 649, 664; 897 NW2d 195 (2016), and a trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *People v Babcock*, 469 Mich 247, 269-270; 666 NW2d 231 (2003). Under MCL 750.520b(3), a trial court may impose a prison term for CSC-I that is "to be served consecutively to any term of imprisonment imposed for any other criminal offense arising from the same transaction," including multiple convictions of CSC-I arising from the same transaction. *People v Ryan*, 295 Mich App 388, 406; 819 NW2d 55 (2012). "For multiple penetrations to be considered as part of the same transaction, they must be part of a continuous time sequence, not merely part of a continuous course of conduct." *People v Bailey*, 310 Mich App 703, 725; 873 NW2d 855 (2015) (quotation marks and citation omitted). "[T]rial courts imposing one or more discretionary consecutive sentences are required to articulate on the record the reasons for each consecutive sentence imposed." *Norfleet*, 317 Mich App at 654. The reasoning of the trial court at the sentencing hearing, "considered in conjunction with the Legislature's express authorization of consecutive sentences," may suffice "to demonstrate an outcome within the range of reasonable and principled outcomes . . . ." *People v Baskerville*, 333 Mich App 276, 290; 963 NW2d 620 (2020).

Defendant's convictions of CSC-I were for: (1) fellatio; (2) anal penetration by defendant's penis; and (3) digital penetration of the genital opening. The trial court imposed the sentences for all three CSC-I convictions to run consecutive to each other. TB's trial testimony established that one incident of criminal sexual conduct involved both digital penetration of her genital opening and anal penetration with defendant's penis (counts 2 and 3). TB's testimony further established that, on another occasion, defendant penetrated TB's genital opening with his penis (for which the jury was not instructed), digitally penetrated her genital opening, and told her to perform fellatio

---

[3] "We are not bound to accept such a concession," *People v Reed*, 449 Mich 375, 395; 535 NW2d 496 (1995), but we take seriously concessions made by the prosecution.

(counts 1 and 3).[4] However, nothing in the trial record established that fellatio, anal penetration, and digital penetration all occurred during the same transaction. Therefore, although we conclude that the trial court did not abuse its discretion by ordering that the sentences for counts 2 and 3 be served consecutively, or for ordering that the sentences for counts 1 and 3 be served consecutively, we find that the trial court abused its discretion when it ordered that the sentences for counts 1 and 2 be served consecutively. No evidence was presented at trial establishing that fellatio and anal penetration occurred during the same transaction. Accordingly, we affirm defendant's convictions on all three charges of CSC-I, but we vacate the consecutive sentences imposed for those offenses and remand this matter for resentencing.

Convictions affirmed, consecutive sentences vacated, and case remanded for resentencing. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Christopher M. Murray
/s/ Christopher P. Yates

---

[4] We note that if the jury had been instructed in accordance with the CSC-I charges in defendant's first trial for the separate acts of fellatio, penetration of the genital opening with defendant's penis, and digital penetration of the genital opening, and had the jury convicted defendant on those bases, consecutive sentences for all three convictions would have been permissible based on that incident because all of those acts arose out of the same transaction.