*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

AUSTIN MARTIN BATZER,

        Defendant-Appellant.

UNPUBLISHED
April 30, 2026
10:41 AM

No. 369901
Oakland Circuit Court
LC No. 2022-282363-FC

Before: CAMERON, P.J., and BORRELLO and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of eight counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b, one count of second-degree criminal sexual conduct (CSC-II), MCL 750.520c, one count of unlawful imprisonment, MCL 750.349b(1)(b), and one count of assault by strangulation, MCL 750.84. The trial court sentenced defendant to terms of imprisonment of 225 months to 50 years for each of the CSC-I convictions, 7 to 15 years for the CSC-II and unlawful-imprisonment convictions, and 4 to 10 years for the assault-by-strangulation conviction. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of defendant's interactions with the victim, who he met through her pimp, C.J. When they met, defendant bought the victim some food and supplies and the pair had consensual sex. Defendant next encountered the victim after C.J. threatened her in his car and the victim jumped out and ran to a gas station. She later contacted C.J. to pick her up. C.J. instead contacted defendant to pick her up at a gas station, which he did. Defendant and the victim began to have consensual sex in his car. The victim was afraid of being seen, so they proceeded to defendant's house. Defendant had the victim climb through his bedroom window so the other people in the home would not know she was there. Defendant then began violently sexually assaulting her in various ways—including, relevant to this appeal, choking her—for hours. The victim also testified that, at one point, defendant brought a handsaw and shears into the room, made sure she saw them, and then set them down without further explanation. Throughout the assault, defendant refused to let the victim leave the room and refused to stop when asked. The

-1-

victim eventually escaped out the window and ran to a neighbor for help. The neighbor called the police, who came and arrested defendant. The victim was later taken to the hospital and then to HAVEN, where she underwent an examination with a sexual-assault nurse.

The victim testified about the circumstances of the assault at defendant's jury trial. Relevant here, the jury also heard testimony from the sexual-assault nurse regarding the victim's examination. Testimony from the nurse about the victim's statements made during the examination were admitted into evidence under MRE 803(4). The jury convicted defendant as noted. Defendant now appeals.

## II. ANONYMOUS JURY

Defendant first argues that the trial court violated his due-process rights by referring to jurors by numbers. We disagree.

### A. PRESERVATION AND STANDARD OF REVIEW

A defendant must raise an issue in the trial court in order to preserve it for appellate review. *People v Heft*, 299 Mich App 69, 78; 829 NW2d 266 (2012). Defendant failed to preserve this issue because he did not raise any issue regarding the purported anonymity of the jury in the trial court. Accordingly, our review is for plain error affecting defendant's substantial rights. Unpreserved issues are reviewed for plain error affecting substantial rights. *People v Hanks*, 276 Mich App 91, 92; 740 NW2d 530 (2007). "Under the plain-error rule, defendant bears the burden to prove (1) an error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected substantial rights, i.e., prejudiced defendant by affecting the outcome of the proceedings." *People v Anderson*, 341 Mich App 272, 279-280; 989 NW2d 832 (2022) (quotation marks and citations omitted). Reversal is not warranted unless "the plain error seriously affected the fairness, integrity, or public reputation of the judicial proceedings independent of defendant's innocence." *Id*. at 380.

### B. ANALYSIS

The trial court began voir dire by explaining to the jury panel: "We do not refer to the jurors by name. We refer to them by juror seat number or by juror number." This procedure, defendant argues, improperly suggested to the jury panel that the trial court "had already prejudged the outcome of the trial and was taking necessary steps so that the jurors could do their duty without fear of reprisal."

Referring to prospective jurors by number rather than by name does not render a jury anonymous. *Hanks*, 276 Mich App at 93. To the contrary, this Court has defined an "anonymous jury" as one in which certain information, such as "certain biographical information about potential jurors," is "withheld from the parties, presumably for the safety of the jurors or to prevent harassment by the public." *People v Williams*, 241 Mich App 519, 522-523; 616 NW2d 710 (2000) (quotation marks and citation omitted). "In order to successfully challenge the use of an 'anonymous jury,' the record must reflect that the parties have had information withheld from them, thus preventing meaningful voir dire, or that the presumption of innocence has been compromised." *Id*. at 523.

Here, nothing in the record suggests that the trial court *withheld* any information from the parties. Nor does defendant even allege that biographical information about the prospective jurors was withheld. Instead, defendant claims, without evidence, that the procedure used publicly revealed the trial court's bias against him, thereby prejudicing his defense. Defendant's speculation into the trial court's motive fails to acknowledge that using jury numbers rather than names is common procedure used by trial courts "to streamline the voir dire process." *People v Lewis*, ___ Mich App ___, ___; ___ NW3d ___ (2026) (Docket Nos. 368179, 368180, 368181, and 376719); slip op at 3. Defendant has thus failed to establish plain error.

Although the jurors were referred to by number, nothing in the record suggests that any information was *withheld* from the parties. Moreover, even if the trial court's decision could be interpreted as undermining the presumption of innocence, any potential error would have been corrected when it instructed the jury on the presumption of innocence, because "[j]urors are presumed to follow their instructions, and jury instructions are presumed to cure most errors." *People v Zitka*, 335 Mich App 324, 348; 966 NW2d 786 (2020) (quotation marks and citation omitted).

## III. HEARSAY

Defendant next argues that the trial court erred by admitting hearsay testimony from the sexual-assault nurse about the victim's statements during her examination. We disagree.

### A. PRESERVATION AND STANDARD OF REVIEW

Defendant preserved this issue by objecting to the testimony as hearsay at trial. *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). We therefore review the trial court's decision to admit this evidence for an abuse of discretion. *Id*. A trial court abuses its discretion when it chooses an outcome that falls outside the range of reasonable and principled outcomes. *People v Dixon-Bey*, 321 Mich App 490, 496; 909 NW2d 458 (2017).

### B. ANALYSIS

The parties do not dispute that the sexual-assault nurse's testimony about the victim's statements during the examination were hearsay. Instead, the parties dispute whether the statements fell under MRE 803(4), which permits the admission of:

> Statements made for purposes of medical treatment or medical diagnosis in connection with treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably necessary to such diagnosis and treatment.

Defendant claims this exception is inapplicable because the purpose of the examination was to pursue criminal charges against defendant, not for treatment or diagnosis. But the nurse testified that the interview was for medical intervention and was not similar to a law-enforcement interview. She went on to explain that patients are asked what happened in order to know how to medically treat them. We defer to the trial court's credibility determination regarding this

testimony. See *People v White*, 331 Mich App 144, 150; 951 NW2d 106 (2020). Moreover, the cases cited by defendant are distinguishable because they involved victims who underwent examinations months after the attack, indicating that the examinations were for criminal prosecution; the victim in this case went to the hospital and interviewed with the sexual-assault nurse immediately after the assaults.[1]

## IV. PROSECUTORIAL ERROR

Defendant next argues the prosecutor erred[2] by (1) improperly vouching for the victim's credibility, (2) improperly invoking the jury's sympathy, and (3) disparaging defendant for exercising his right to a jury trial. We disagree.

## A. PRESERVATION AND STANDARDS OF REVIEW

To preserve a claim of prosecutorial misconduct, a defendant must contemporaneously object to the alleged misconduct. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Defense counsel objected to the prosecutor's comments relating to any disparagement for defendant's exercise of his right to a jury trial but did not object to the prosecutor's comments relating to any credibility-vouching or sympathy-invocation. Thus, only the jury-trial-right argument is preserved.

We review defendant's preserved claim of prosecutorial error de novo to determine whether he was "denied a fair and impartial trial." *Id*. We review defendant's unpreserved claims of prosecutorial error for plain error affecting substantial rights. *Id*. "Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Id*. at 475-476 (quotation marks and citation omitted). "Further, this Court cannot find error requiring reversal where a curative instruction could have alleviated any prejudicial effect." *Id*. at 476 (quotation marks, brackets, and citation omitted).

## B. CREDIBILITY VOUCHING

Defendant argues that the prosecutor improperly vouched for the victim's credibility when she said that the victim "was blatantly honest about what she went through[]" and "she's not lying."

---

[1] Defendant repeatedly emphasizes on appeal that the hearsay in this case was testimonial. But, because the victim testified at trial and defendant had the opportunity to cross-examine her, any testimonial nature of these statements is irrelevant. See *Crawford v Washington*, 541 US 36, 59; 124 S Ct 1354; 158 L Ed 2d 177 (2004) (explaining that "[t]estimonial statements of witnesses *absent from trial* have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine.") (Emphasis added).

[2] Defendant frames his arguments as "prosecutorial misconduct" on appeal. "Although 'prosecutorial misconduct' is a commonly accepted term of art in criminal appeals, it is a misnomer when referring to allegations that do not involve violations of the rules of professional conduct or legal activity." *People v Thurmond*, 348 Mich App 715, 735 n 6; 20 NW3d 311 (2023).

While a prosecutor "cannot vouch for the credibility of his [or her] witnesses to the effect that he has some special knowledge concerning a witness' truthfulness[,]" *People v Bahoda*, 448 Mich 261, 276; 531 NW2d 659 (1995), a prosecutor may "argue from the facts that a witness is credible or that the defendant or another witness is not worthy of belief[,]" *People v Howard*, 226 Mich App 528, 548; 575 NW2d 16 (1997). Additionally, a prosecutor "has wide latitude in arguing the facts and reasonable inferences, and need not confine argument to the blandest possible terms." *People v Dobek*, 274 Mich App 58, 66; 732 NW2d 546 (2007). Here, the prosecutor never stated or implied that she had special knowledge about the victim's credibility. She simply argued that, given the facts in this case, it could be inferred that she had no apparent motive to lie. This was not improper vouching.

## C. JURY SYMPATHY

Defendant next argues that the prosecutor improperly appealed to the jury's sympathy when she stated:

> She has to go through a HAVEN—she has to go to the hospital, tell everybody tell everybody what—about what happened. She has to jump out of a window in the shirt of the rapist, the person who sexually assaulted her, and run for her life to get help. She tells the people at the hospital that. She says, "I don't want to talk." Then—then she says, "I don't want to keep reliving this." She has to go through HAVEN, she has to go through a sexual assault kit[.]

A prosecutor may not appeal to the jury to sympathize with the victim. *Dobek*, 274 Mich App at 80. But, reading the challenged remarks in context, the prosecutor's statements were not made to invoke sympathy; they were in furtherance of her proper argument in support of the victim's credibility. Moreover, even if we were to accept that the comment invoked some sympathy from the jury, the trial court instructed the jury that sympathy is not a factor in its deliberations. Again, "[j]urors are presumed to follow their instructions, and jury instructions are presumed to cure most errors[,]" *Zitka*, 335 Mich App 348 (quotation marks and citation omitted), and, because this issue is unpreserved, "this Court cannot find error requiring reversal where a curative instruction could have alleviated any prejudicial effect." *Bennett*, 290 Mich App at 476 (quotation marks, brackets, and citation omitted).

## D. RIGHT TO A JURY TRIAL

Defendant's final prosecutorial-error argument is that the prosecutor improperly implied during closing argument that the jury should draw negative inferences from defendant's exercise of his constitutional right to have a trial and cross-examine witnesses when she said:

> [S]he has to testify at a preliminary exam, she has to testify in a trial, she has to be cross-examined about specific details about being sexually assaulted. This is not even a consensual sexual encounter. And imagine if it were, and having to be cross-examined about that in a courtroom full of strangers.

But, when read in context, it is clear this is not what the prosecutor was arguing. These statements were also a continuation of the prosecutor's permissible argument regarding the victim's

credibility. The prosecutor was simply arguing that it would be unlikely for the victim to fabricate this story, because it would result in her having to divulge highly intimate and personal aspects of her life to strangers during a criminal proceeding. In sum, defendant has failed to demonstrate that the prosecutor's comments were erroneous.

## V. OV ASSESSMENTS

Defendant next argues the trial court erred by assessing (1) OV 7, aggravated physical abuse, MCL 777.37, at 50 points; (2) OV 8, victim asportation or captivity, MCL 777.38, at 15 points; and (3) OV 10, exploitation of a vulnerable victim, MCL 777.40, at 15 points. We disagree.

## A. PRESERVATION AND STANDARD OF REVIEW

Defendant preserved his challenges by objecting to the trial court's assessments of OVs 7, 8, and 10 at sentencing. *People v Kimble*, 470 Mich 305, 310; 684 NW2d 669 (2004).[3] We therefore review the trial court's factual determinations in assessing the OVs for clear error, and its findings must be supported by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). A factual finding is clearly erroneous when the reviewing court is left "with a definite and firm conviction that a mistake has been made." *People v McElhaney*, 215 Mich App 269, 273; 545 NW2d 18 (1996). We review de novo whether the facts, as found, are adequate to satisfy the conditions prescribed by the variable's statute. *Hardy*, 494 Mich at 438.

## B. OV 7

MCL 777.37(1)(a) directs that 50 points are assessed for OV 7 when the victim "was treated with sadism, torture, excessive brutality or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." The statute defines "sadism" as "conduct that subjects a victim to extreme or prolonged pain or humiliation and is inflicted to produce suffering or for the offender's gratification." MCL 777.37(3).

Defendant unconvincingly argues that none of the qualifiers listed in MCL 777.37(1)(a) were present in this case. While defendant is correct that the trial court could not have assessed OV 7 at 50 points for torture, because the jury acquitted him of that charge, and acquitted conduct may not be used to inflict harsher sentences on defendants, *People v Beck*, 504 Mich 605, 625-626; 939 NW2d 213 (2019), the evidence was sufficient to support the other qualifiers in MCL 777.37(1)(a). The trial court correctly found that defendant's conduct amounted to sadism as defined by the statute because he kept her in his bedroom for hours and repeatedly sexually assaulted her in different ways despite her telling him that it hurt. Adding to the humiliation aspect

---

[3] Defendant's argument with respect to OV 10 provides the legal background of the variable before conclusively stating that "[t]he record did not show that there was any predatory conduct by [defendant]." "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims[.]" *People v Iannucci*, 314 Mich App 542, 545; 887 NW2d 817 (2016) (quotation marks and citation omitted). Accordingly, defendant has abandoned this issue by failing to brief the merits of his challenge. *Id*.

of the assessment, the trial court also noted that defendant did not allow the victim to leave his bedroom—even to go to the bathroom—and forced her to defecate in a trash can in the room. In addition to the sadism qualifier, the trial court also did not find defendant's testimony that he brought the handsaw and shears into the room to cut down the bush outside his window to be credible, noting that it made more sense that he brought the items in to increase the victim's fear and anxiety. We defer to the trial court's credibility determinations, *White*, 331 Mich App 150, and find no clear error in the trial court's findings. OV 7 was properly assessed at 50 points.

## C. OV 8

MCL 777.38(1)(a) directs that 15 points are assessed for OV 8 when the victim "was asported to another place of greater danger or to a situation of greater danger or was held captive beyond the time necessary to commit the offense."

Defendant argues there was no evidence that the victim was held captive in the house "in furtherance of the offenses and not merely incidental to the commission of them." The trial court disagreed, finding the victim "was absolutely held captive beyond the time necessary to commit the offense[,]" in light of the evidence that (1) when the police arrived, the music in defendant's bedroom was very loud, (2) defendant would not permit the victim to leave the room and forced her to defecate in a trash can, and (3) after the sexual assaults, the victim raised her voice to try to get someone to hear her and defendant's "own testimony was that he punched her to stop her from making noise so no one would know that she was there." The trial court's findings are not clearly erroneous; there was sufficient evidence that defendant continued to hold the victim captive in his bedroom longer than necessary to commit the sexual assaults. OV 8 was properly assessed at 15 points.

## VI. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant raises four claims of ineffective assistance of counsel, arguing trial counsel was ineffective by: (1) failing to raise a defense of erotic asphyxiation, (2) stipulating to the introduction of a recorded jail-call defendant made, (3) failing to lay the "proper foundation" to admit video evidence of an interview the victim underwent about the assaults, and (4) failing to adequately investigate the victim and question her about her criminal history. We disagree with all of defendant's arguments.

## A. PRESERVATION AND STANDARDS OF REVIEW

Defendant failed to preserve his first and second ineffective-assistance claims because he did not move for a new trial or *Ginther*[4] hearing. *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020). As for the third and fourth claims, the record indicates that defendant attempted to preserve them by personally moving for a new trial, but the trial court denied the motion as procedurally improper because he was represented by counsel. To the extent that this could be considered sufficient to preserve the issue, see, e.g., *Glasker-Davis v Auvenshine*, 333

---

[4] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

Mich App 222, 227-228; 964 NW2d 809 (2020) ("issue preservation requirements only impose a general prohibition about raising an issue for the first time on appeal[]"), because no *Ginther* hearing was held, our review for all of defendant's claims is limited to errors apparent from the record. *Abcumby-Blair*, 335 Mich App at 227; *People v Spaulding*, 332 Mich App 638, 656; 957 NW2d 843 (2020).

## B.  LEGAL FRAMEWORK

Under both the United States and Michigan Constitutions, a criminal defendant has the right to a fair trial.  US Const, Am VI; Const 1963, art 1, § 17.  "This [right] includes the right to the effective assistance of counsel." *People v Skippergosh*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 364127); slip op at 10 (quotation marks and citation omitted).  "To establish ineffective assistance of counsel, a defendant must show (1) that trial counsel's performance was objectively deficient, and (2) that the deficiencies prejudiced the defendant." *Id*. (quotation marks and citation omitted).  "A deficiency prejudices a defendant when there is a reasonable probability that but for trial counsel's errors, the verdict would have been different." *Id*. (quotation marks and citation omitted).

"[D]ecisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, and this Court will not substitute its judgment for that of counsel regarding matters of trial strategy." *People v Serges*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 355554); slip op at 19 (quotation marks and citation omitted).  "Trial counsel's performance is presumed to be effective, and [a] defendant has the heavy burden of proving otherwise." *Skippergosh*, ___ Mich App at ___; slip op at 10 (quotation marks and citation omitted).  Relatedly, a defendant is "responsible for establishing the factual predicate for his claim of ineffective assistance of counsel." *Serges*, ___ Mich App at ___; slip op at 19.  Finally, the "[f]ailure to raise a futile objection or advance a meritless argument does not constitute ineffective assistance of counsel." *Skippergosh*, ___ Mich App at ___; slip op at 10 (quotation marks and citation omitted).

## C.  EROTIC ASPHYXIATION

Defendant argues trial counsel was ineffective for failing to raise erotic asphyxiation as a defense to his assault-by-strangulation charge.  Defendant's argument necessarily fails, because defendant testified that he never strangled the victim.  At most, he stated that at some point the victim put his hand on her neck but pulled it away.  Thus, the invocation of an erotic-asphyxiation defense would necessarily undermine defendant's own testimony and damage his credibility with the jury.  Counsel's failure to raise such a self-defeating argument cannot be said to constitute deficient performance rising to the level of ineffective assistance. *Id*.

## D.  JAIL-CALL RECORDING

Defendant next argues that counsel's stipulation to the admission of a jail-call recording constituted deficient performance because it revealed to the jury that he was incarcerated.  He claims this decision was contrary to counsel's earlier efforts to exclude a photograph of a gang sign in defendant's jail cell, but trial counsel's motion in limine to exclude the photograph was not

to exclude any reference to defendant being in jail; it was to preclude the admission of potentially highly unfairly prejudicial evidence of gang graffiti in defendant's jail cell. The jail-call recording was not the same as the visually inflammatory photograph. Moreover, as this Court has recognized, because defendant was on trial for a serious crime, "the jury will already be aware that [he] at some point was arrested and in police custody." *People v Horton*, 341 Mich App 397, 405; 989 NW2d 885 (2022). Indeed, the record reflects that, by the time the call was admitted into evidence and played, the jury was already aware of the fact that defendant had been arrested by virtue of the arresting officer's testimony at trial. Finally, the trial court then instructed the jury that defendant's incarceration was not something to consider. Defendant cannot show that he was prejudiced by trial counsel's stipulation. *Skippergosh*, ___ Mich App at ___; slip op at 10.

## E. VIDEO INTERVIEW

In his Standard 4 brief, defendant argues that trial counsel was ineffective for failing to "lay the proper foundation" to admit a video recording of an interview in which the victim made "multiple highly probative, critically damaging, exculpating, and even incriminating statements." The trial court excluded the video because it contained hearsay statements from the victim, even though trial counsel claimed the video was being introduced not for the truth of the matter asserted—MRE 801—but to show that the victim was still under the influence of drugs during the interview. Defendant does not specifically identify what other "foundation" trial counsel should have tried to lay, but alludes to the fact that the video was impeachment evidence against the victim's testimony at trial. A witness may be confronted with prior inconsistent statements under MRE 613(b). But defendant does not identify which statements would be properly admitted as impeachment evidence, nor does he explain what behavior the victim exhibited during the interview that would permit the jury to "properly gaug[e] [her] credibility." Because defendant has failed to establish the factual predicate for his claim, *Serges*, ___ Mich App at ___; slip op at 19, this argument fails.

## F. INVESTIGATING THE VICTIM

Finally, defendant argues trial counsel was ineffective because he failed to adequately investigate the victim and question her about her criminal history. He claims that, had counsel properly investigated the victim's criminal history, there was a reasonable probability that "he would have significantly altered his defense and prepared one of substantially more probative value." But defendant has not established that counsel was, in fact, ignorant of the victim's criminal history, nor does he explain what "significant alterations" to his defense theory such knowledge would have caused. Thus, defendant has again failed to establish the factual predicate for this claim. *Serges*, ___ Mich App at ___; slip op at 19. Defendant further asserts that, had counsel presented this information to the jury, it would be able to infer that she had an ulterior motive for testifying—either because of her own bias against defendant or because she has a personal interest in testifying given her own pending charges. But, again, defendant does not explain how the victim's criminal history would shine light on any alleged bias or personal interest in testifying. Accordingly, this claim similarly fails. *Id.*

Affirmed.

/s/ Thomas C. Cameron
/s/ Stephen L. Borrello
/s/ Brock A. Swartzle