*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

LEMMIE EDWARD JONES,

Defendant-Appellant.

UNPUBLISHED
February 09, 2026
1:48 PM

No. 368322
Ingham Circuit Court
LC No. 22-000110-FJ

Before: GADOLA, C.J., and BOONSTRA and PATEL, JJ.

PER CURIAM.

Defendant appeals by right his jury trial convictions of first-degree premeditated murder, MCL 750.316(1)(a), intentional discharge of a firearm from a motor vehicle, MCL 750.234a(1)(d), and four counts of assault with intent to murder, MCL 750.83. The trial court sentenced defendant to concurrent prison terms of 480 to 720 months for the first-degree murder conviction and 285 to 600 months for each of the other convictions, with credit for 427 days in jail. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

On December 10, 2021, a drive-by shooting occurred in Lansing. On the night of the shooting, defendant—who was seventeen years old at the time—was accompanied by his girlfriend, Alayziah Webb, and Webb's friend, Mia Graves. They left Webb's home in Graves's black 2006 Mercury Mariner, picked up Mehkiyan McRina at his home, and headed to a liquor store. McRina, Graves, and Webb testified that defendant drove, Webb sat in the passenger seat, Graves sat in the middle of the second seat, and McRina sat in the second seat behind defendant. McRina, Graves, and Webb also testified that defendant drove with an "assault rifle" next to his leg between the driver's seat and the center console.

Defendant stopped at a gas station at the intersection of Pennsylvania Avenue and Miller Road, where Graves exited the vehicle and entered the station. While Graves was inside, defendant drove out of the parking lot to follow a vehicle, leaving Graves behind. Webb testified that defendant recognized the sound of the other vehicle as one belonging to Arianna Delacruz, Antoine

-1-

Childress's girlfriend, and that defendant had been having a conflict with Childress. Delacruz drove a Dodge Journey that was very loud, especially when she accelerated.

As the vehicles approached Cedar Street, defendant turned off his headlights. The Dodge Journey stopped for a red light at Miller Road and Cedar Street. Delacruz was driving the Dodge Journey; Jasmin Cross, DP (Cross's infant son), and Childress were passengers in the vehicle. Defendant drove up behind the Dodge Journey and then into the left turn lane. Once he was alongside Delacruz's vehicle, defendant motioned for Webb to roll down the window, and he began firing his rifle through the open window at Delacruz's vehicle. McRina thought that defendant shot the gun about 10 to 12 times. McRina testified that the gun sounded like a "rifle type AR gun." After the shooting, defendant said, "That was Ant and them." McRina testified that "Ant" was a nickname for Childress.

Delacruz, who was shot three times, died as a result of a gunshot wound to her head. Childress sustained a gunshot wound to his left thigh. Cross sustained three gunshot wounds to the left side of her body near her arm. DP was hit in the skull by a bullet fragment, but his brain was not injured.

Defendant was charged with open murder, and he was convicted and sentenced as described. This appeal followed.

## II. ANONYMOUS JURY

Defendant argues that he was denied his right to due process and a fair trial when the trial court and trial counsel referred to jurors only by their juror numbers. Defendant also argues that he was denied the effective assistance of counsel when defense counsel stated to the jurors that he was referring to them by their juror numbers for their safety. We disagree in both respects.

At trial, a defendant must object to the use of juror numbers in order to preserve the issue for appeal. *People v Hanks*, 276 Mich App 91, 92; 740 NW2d 530 (2007). A defendant may raise the issue of ineffective assistance of counsel by moving for a new trial or requesting a *Ginther*[1] hearing. *People v Carll*, 322 Mich App 690, 702; 915 NW2d 387 (2018). In this case, defendant did not object to the use of juror numbers, move for a new trial, or request a *Ginther* hearing. Therefore, these arguments are unpreserved. We review unpreserved claims of constitutional error for plain error affecting a defendant's substantial rights. *People v Williams*, 245 Mich App 427, 431; 628 NW2d 80 (2001). "Under the plain error rule, defendant bears the burden to prove (1) an error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected substantial rights, i.e., prejudiced defendant by affecting the outcome of the proceedings." *People v Anderson*, 341 Mich App 272, 279; 989 NW2d 832 (2022) (quotation marks and citation omitted). We also review unpreserved claims of ineffective assistance of counsel for errors apparent on the record. *People v Haynes*, 338 Mich App 392, 429; 980 NW2d 66 (2021).

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

This Court addressed the issue of an "anonymous jury" in *People v Williams*, 241 Mich App 519; 616 NW2d 710 (2000), and *People v Hanks*, 276 Mich App 91; 740 NW2d 530 (2007).[2] "An 'anonymous jury' is one in which certain information is withheld from the parties, presumably for the safety of the jurors or to prevent harassment by the public." *Williams*, 241 Mich App 522. This Court recognized that an anonymous jury has the potential to endanger "(1) the defendant's interest in being able to conduct a meaningful examination of the jury and (2) the defendant's interest in maintaining the presumption of innocence." *Id*. at 522-523. This Court concluded that merely calling jurors by numbers is not an anonymous jury "in the strict sense of the term." *Id*. at 523. An anonymous jury is one in which "something more than just the jurors' names is withheld from the parties." *Hanks*, 276 Mich App at 93. "In order to successfully challenge the use of an 'anonymous jury,' the record must reflect that the parties have had information withheld from them, thus preventing meaningful voir dire, or that the presumption of innocence has been compromised." *Williams*, 241 Mich App at 523.

In defendant's case, the jurors were called by their juror numbers instead of their names. However, the record does not reflect that the jurors' names or their biographical information was withheld from the parties. The prosecutor informed the jurors that the parties had received a brief "bio" regarding each juror and that he wanted to review their employment with them. The prosecutor proceeded to question the jurors, and had information regarding the jurors' employment before questioning them. Defense counsel also questioned jurors regarding their employment. Both counsel additionally questioned the jurors about life experiences that might impact their ability to decide the case impartially and fairly. Accordingly, the record does not support defendant's contention that the jury was "anonymous" as previously defined by this Court in *Hanks*. Further, defendant has failed to demonstrate that identifying the jurors by number denied him a meaningful examination of the jurors or compromised his presumption of innocence.

Defendant also argues that he was denied the effective assistance of counsel when defense counsel informed the jurors that he was unable to call them by name and was required to identify them by their juror numbers for their safety. Defendant claims that counsel's statement led the jury to draw the conclusion that defendant posed a danger to them. Defense counsel's exact words were:

> Okay. All right, thank you. And Juror Number 2—and, by the way, I would love to use your names, but we all want you to feel safe, so that's why we use numbers. So it's not like we're impersonal or we don't care about you or you're just a number to us, but that's why.

Defendant argues that this statement deprived him of the presumption of innocence by implying that the jurors needed protection from defendant. We disagree.

---

[2] We are bound by *Williams* and *Hanks* as previously published opinions "that ha[ve] not been reversed or modified by the Supreme Court, or by a special panel of the Court of Appeals as provided in this rule." MCR 7.215(J)(1). We reject defendant's request that we convene a conflict panel, because we are not convinced that *Williams* and *Hanks* were wrongly decided.

In order to establish ineffective assistance of counsel, a defendant must demonstrate "(1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different." *People v Acumby-Blair*, 335 Mich App 210, 228; 966 NW2d 437 (2020). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018) (quotation marks and citation omitted). A defendant must meet a heavy burden to overcome the presumption that trial counsel employed an effective trial strategy. *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009).

There is no record evidence to support defendant's contention that the jurors thought the use of numbers was abnormal or that the use of juror numbers conveyed to the jurors that defendant posed a danger to them. Defense counsel's statement can be reasonably interpreted as an attempt to build a rapport with the jury by informing the potential jurors that he did not think of them as simply a number. Further, defense counsel's statement conveyed an impression that the trial court and the attorneys used numbers to identify jurors as a general practice. Defendant has failed to overcome the presumption that defense counsel's statement was part of an effective trial strategy. *Payne*, 285 Mich App at 190. Accordingly, defendant has failed to demonstrate a reasonable probability that, but for defense counsel's statement, the outcome of the trial would have been different. *Randolph*, 502 Mich at 9.

## III. ADMISSION OF EVIDENCE

Defendant also argues that the trial court abused its discretion by denying defendant's request to admit screenshots taken from McRina's Facebook page. We disagree.

We review for an abuse of discretion a trial court's decision to admit or deny evidence. *People v Smith*, 336 Mich App 79, 105; 969 NW2d 548 (2021). "An abuse-of-discretion standard recognizes that there may be more than one principled outcome and the trial court may not deviate from that principled range of outcomes." *People v Boykin*, 510 Mich 171, 182; 987 NW2d 58 (2022). We review de novo preliminary questions of law regarding the interpretation and application of the rules of evidence. *Smith*, 336 Mich App at 105.

At trial, defendant argued that McRina was the shooter. In support of this argument, defendant requested the admission of two screenshots from McRina's Facebook profile. The first screenshot, which had been taken by a police officer, displayed McRina's user or screen name as "Bam Spot 'Em and Pop 'Em," along with a photo of an assault rifle in an unidentified individual's hand. Defense counsel stated that he planned to question McRina about the user name and about the assault rifle. The second screenshot, which was taken a few days before trial by defense counsel, showed McRina's user name as "Lik" or "Turn Around Lik." Defense counsel indicated that he intended to question McRina about whether "Lik" had anything to do with Malik Sherrill, also known as "Lik," the father of Cross's son (DP).

The prosecution argued that the screenshots were inadmissible because they were not relevant and presented improper character evidence. The prosecution also argued that there was no evidence from which to determine when the Facebook profile was created or deleted. The prosecution asked the trial court to deny defendant's request.

The trial court ruled that the proposed evidence was not relevant. Although defendant's theory was that McRina was the shooter, the trial court found that McRina's screen name did not make it more or less likely that McRina was the shooter. The trial court also did not agree that the proposed evidence demonstrating McRina's possible experience with guns made it more or less likely that McRina had shot the victims. The trial court also noted that the evidence had a "propensity" issue.

Evidence is admissible if it is relevant. MRE 402.[3] " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is consequence to the determination of the action more or less probable than it would be without the evidence." MRE 401.

We conclude that the trial court did not abuse its discretion by denying defendant's request to admit the screenshots of McRina's Facebook page. Defendant did not produce any evidence to establish that it was McRina's hand holding the gun in the first screenshot or that McRina possessed such a gun. Additionally, evidence that McRina's user or screen name was "Bam Spot 'Em and Pop 'Em," did not have a tendency to make McRina's identity as the shooter "more probable or less probable than it would be without the evidence." *Sabin*, 463 Mich at 56-57. With regard to the other screen names, "Lik" or "Turn Around Lik," there was no evidence presented at trial that anyone in defendant's vehicle knew that Cross or DP was in the Dodge Journey when defendant followed the vehicle. Moreover, defense counsel did not question McRina regarding any dispute he had with Sherrill or any motivation that he might have had to shoot Sherrill's child. Because the screenshots did not tend to make it more probable that McRina was the shooter, they were not relevant and the trial court properly denied their admission.

Defendant also argues that the trial court's ruling that the screenshots were inadmissible hindered his ability to present a defense under the Michigan and federal Constitutions. Defendant did not raise this issue in the lower court; therefore, it is unpreserved. *People v Vaughn*, 491 Mich 642, 653-654; 821 NW2d 288 (2012). We review unpreserved claims of constitutional error for plain error affecting a defendant's substantial rights. *Williams*, 245 Mich App at 431. "Under the plain error rule, defendant bears the burden to prove (1) an error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected substantial rights, i.e., prejudiced defendant by affecting the outcome of the proceedings." *Anderson*, 341 Mich App at 279 (quotation marks and citation omitted).

"A criminal defendant has a right to present a defense under our state and federal constitutions." *People v Anstey*, 476 Mich 436, 460; 719 NW2d 579 (2006). "Few rights are more fundamental than that of an accused to present evidence in his . . . own defense." *People v King*, 297 Mich App 465, 473; 824 NW2d 258 (2012) (quotations marks and citation omitted). However, "this right is not unlimited and is subject to reasonable restrictions." *Id*. "The Michigan Rules of Evidence do not infringe on a defendant's constitutional right to present a defense unless they are arbitrary or disproportionate to the purposes they are designed to serve." *Id*. (quotation marks and

---

[3] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024. See 512 Mich lxiii (2023). We rely on the evidentiary rules in effect at the time of trial.

citation omitted). On appeal, defendant argues that the trial court improperly applied the Michigan Rules of Evidence to the screenshots, but he does not argue that the rules themselves were arbitrary or disproportionate. Rather, defendant simply continues to assert his argument that the screenshots "were relevant and probative[.]" Accordingly, defendant has failed to establish that he was denied his right to present a defense.

## IV. SENTENCING

Defendant argues that he should be resentenced, for several reasons. First, defendant argues that the trial court failed to properly consider his youth as a mitigating factor as required by the Michigan Supreme Court in *Boykin*. Next, defendant claims that he was denied the effective assistance of counsel because his trial counsel failed to properly investigate and submit mitigating evidence to the trial court for sentencing. Finally, defendant argues that the trial court abused its discretion by imposing a disproportionate sentence. We again disagree.

We review the reasonableness of a trial court's sentencing decision for an abuse of discretion. *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017). "An abuse-of-discretion standard recognizes that there may be more than one principled outcome and the trial court may not deviate from that principled range of outcomes." *Boykin*, 510 Mich at 182. A trial court "abuse[s] its discretion [in sentencing] by violating the principle of proportionality . . . ." *People v Dixon-Bey*, 321 Mich App 490, 520; 909 NW2d 458 (2017) (quotation marks and citation omitted). The principle of proportionality "requires sentences imposed to be proportionate to the seriousness of the circumstances surrounding the offense *and the offender*." *Boykin*, 510 Mich at 188 (quotation marks and citation omitted). "A trial court must adequately explain its sentence on the record in order to facilitate appellate review." *Id*. at 194.

## A. MITIGATING FACTORS OF YOUTH

Defendant argues that the trial court failed to properly consider the mitigating factors of youth as set forth by the Michigan Supreme Court in *Boykin*. We disagree.

In *Miller v Alabama*, 567 US 460; 132 S Ct 2455; 183 L Ed 2d 407 (2012), the United States Supreme Court recognized certain mitigating factors of youth that a trial court should consider when sentencing a juvenile offender to a sentence of life without parole. These circumstances, known as the "*Miller* factors," include the following:

> (1) the juvenile's "chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences"; (2) the juvenile's family and home environment—"from which he cannot usually extricate himself—no matter how brutal or dysfunctional"; (3) "the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him"; (4) "the incompetencies of youth," which affect whether the juvenile might have been charged with and convicted of a lesser crime, for example, because the juvenile was unable to deal with law enforcement or prosecutors or because the juvenile did not have the capacity to assist their attorney in their own defense; and (5) the juvenile's

"possibility of rehabilitation." [*People v Taylor*, 510 Mich 112, 126; 987 NW2d 132 (2022), quoting *Miller*, 567 U S at 477-478.]

In this case, the prosecution did not seek a sentence of life without parole for defendant's first-degree murder conviction. Accordingly, the trial court sentenced defendant under MCL 769.25(9), which provides:

> If the court decides not to sentence the individual to imprisonment for life without parole eligibility, the court shall sentence the individual to a term of imprisonment for which the maximum term shall be not less than 60 years and the minimum term shall be not less than 25 years or more than 40 years.

In *Boykin*, the Michigan Supreme Court held that trial courts must also consider a defendant's youth and treat it as a mitigating factor when sentencing a juvenile to a term of years under MCL 769.25. *Boykin*, 510 Mich at 189. The Court also acknowledged that a sentencing court must consider the factors it articulated in *People v Snow*, 386 Mich 586, 592; 194 NW2d 314 (1972), when sentencing a defendant under MCL 769.25. *Boykin*, 510 Mich at 183, 188. Those factors are "(1) reformation of the offender; (2) protection of society; (3) disciplining of the wrongdoer; and (4) deterrence of others from committing like offenses." *Id.* (quotation marks omitted). Our Supreme Court held that the mitigating factors of youth should be considered in analyzing each of these factors. *Id.* at 189. The Court elaborated that "a greater possibility exists that a minor's character deficiencies will be reformed." *Id.* at 188-189 (quotation marks and citation omitted). A trial court must also determine how a youth's "heightened capacity for change relative to adults" changes the determination of the length of a juvenile's incarceration necessary to protect society. *Id.* at 189 (quotation marks and citation omitted). "In addition, because it is less supportable to conclude that even a heinous crime committed by a juvenile is evidence of irretrievably depraved character, *Snow*'s focus on discipline of the wrongdoer must be viewed differently under the lens of youth." *Id.* (quotation marks and citation omitted). The consideration of deterrence also changes for a youth because a juvenile is "less likely to consider potential punishment." *Id.* (quotation marks and citations omitted). Accordingly, as stated, our Supreme Court concluded "that trial courts must consider a juvenile defendant's youth to be a mitigating factor when sentencing them to term-of-years sentences under MCL 769.25 . . . ." *Id.* at 178.

Before defendant's sentencing, defense counsel submitted a memorandum of sentencing that explained defendant's continued denial of the crime and his family history, stating defendant had been speaking with "jailhouse lawyers" who advised him never to admit his involvement in the crime. Defense counsel also stated that defendant knew of his right to an appeal and explained that in defendant's "young, impressionable, not-fully-formed mind," defendant thought that he should deny responsibility instead of declining comment. Defense counsel claimed that defendant's actions immediately after the shooting showed that defendant sought relief from what he had done, such as asking Webb to lay with him because every time he closed his eyes, he saw Delacruz. Defense counsel also stated that defendant's perusal of Delacruz's social media after the shooting was an attempt to come to terms with what he had done. Defense counsel expressed that defendant felt guilt, shame, and remorse, but that because of his youth and upbringing he was unable to admit it. Defense counsel also argued that defendant had been influenced by questionable advice from his loved ones.

Defense counsel noted that, despite telling a probation agent that he had had a "good upbringing," defendant had been exposed to guns at a young age and first held a pistol when he was five or six years old. Defense counsel stated that defendant grew up in a "dope house" and that drug users visited his home to do drugs after defendant went to sleep. Defense counsel argued that defendant was driven to retaliate against Childress in response to an earlier shooting at the home of defendant's brother and niece. Defense counsel explained that defendant's misguided response to the shooting was an attempt to protect his family as he had been taught.

At sentencing, the trial court indicated that it had read defendant's sentencing memorandum and did not disagree with anything in the memorandum. The trial court noted that issues regarding the juvenile brain were currently at the forefront of the criminal justice system. The trial court explained that it could not impose a "forever" sentence because the higher courts and the Legislature no longer allowed a sentence of life without parole for a juvenile in defendant's circumstances.[4] The trial court further noted that the law only allowed a "a certain range of sentencings in this case." The trial court stated that it had read about defendant's chaotic childhood, but that it did not believe that defendant's childhood provided much comfort to Delacruz's mother, or that it would provide comfort to the next relative whose child was shot and killed while driving a vehicle. The trial court stated that its decision was ultimately about the safety of the community.

After defendant filed his appeal by right, he moved for a correction of his sentence in the trial court, arguing, in part, that the court's comments about the recent evolution of juvenile sentencing reflected its agreement with the prosecution's contention that defendant's youth was already accounted for in MCL 769.25 and, thus, that it was not entitled to further consideration at sentencing. At the hearing on defendant's motion for resentencing, the trial court addressed the statements it had made at defendant's sentencing. The trial court explained that Delacruz's mother had just given a victim-impact statement and had asked the trial court to "do the right thing" and to sentence defendant to life without parole. The trial court explained that when it stated that the higher courts and the Legislature had already dealt with the issue, it was attempting to explain to the victim's mother that it could not sentence defendant to life without parole.

The trial court also stated:

> If I were required—I can't conceive of how Mr. Jones would want me to consider the mitigation of youth, weigh it as I'm supposed to against the other factors, and—and always reduce the sentence from the maximum because I could

---

[4] More specifically, the United States Supreme Court in *Miller*, 567 US at 476, held that it was unconstitutional to sentence a juvenile to *mandatory* life imprisonment without the possibility of parole. In response to that decision, Michigan adopted MCL 769.25, which authorized the prosecution to file a motion with the trial court to sentence a defendant to life imprisonment without the possibility of parole. Otherwise, the defendant is subject to a term-of-years sentence, with a maximum term of not less than 60 years and a minimum term of not less than 25 or more than 40 years. MCL 769.25(9). As noted, the prosecution in this case did not file a motion seeking a sentence of life imprisonment without the possibility of parole.

never find that the other factors outweigh it. Why would we have a weighing? Why would we consider the other factors? You could never give the maximum. You would always have to consider mitigation of youth. And I did consider it. I didn't believe that weighed against the other factors it required or called for something less than what I gave. So for those reasons I reject the argument that I did not correctly consider the mitigation of youth.

Although trial courts are not required "to articulate on the record how a defendant's youth affected the decision," *Boykin*, 510 Mich at 178, "a trial court must adequately explain its sentence on the record to facilitate appellate review. *Id*. at 194. Defendant maintains that the trial court's statements at sentencing and at the hearing on defendant's motion to correct an invalid sentence indicate that the trial court did not consider defendant's youth as a mitigating factor. We disagree with that characterization of the record.

Our review of the trial court's remarks at sentencing and at the hearing on the motion for resentencing leads us to conclude that the trial court properly considered defendant's youth as a mitigating factor. Defense counsel submitted a sentencing memorandum arguing that defendant's denial of responsibility for his crime was the result of his age and upbringing, and arguing further that defendant's family history should be considered as a mitigating factor. The trial court stated that it had read the sentencing memorandum, had considered defendant's arguments, and had determined that they did not require the imposition of a lesser sentence in light of the nature of defendant's offense. Although the trial court did not address each *Snow* factor individually, it made it clear that the protection of the community was a significant factor in its decision. In this case, defendant did not merely shoot another person, but fired a rifle indiscriminately in a residential neighborhood, at a vehicle full of people while driving another vehicle full of people, accidentally killing and wounding people who were not his primary target. Defendant appears to have been prepared for such an eventuality by routinely keeping a rifle on hand while driving. And defendant made the decision to begin firing based on nothing more than recognizing the sound of another vehicle as belonging to the girlfriend of his enemy. In light of these facts, the trial court's determination that the safety of the community was paramount was reasonable and supported by the record. See *People v Copeland*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 363925), slip op at 4 (noting that "there are no magic words or phrases that a trial court must use to show that it adequately considered the mitigating qualities of youth" and that "[c]ourts sentencing juvenile defendants to a term-of-years sentence under [MCL 769.25] are required only to make a record demonstrating that the court considered the defendant's youth and treated it as a mitigating factor").

The trial court explicitly stated several times that it had considered defendant's youth as a mitigating factor. In fact, the trial court was quite clear that were it not for defendant's youth, the trial court would have imposed a sentence of life without the possibility of parole. The fact that MCL 769.25 constrained the trial court from imposing such a sentence does not mean that the trial court failed to consider defendant's youth as a mitigating factor or require it to *additionally* mitigate defendant's sentencing by imposing a sentence less than the maximum permitted as a term-of-years sentence under MCL 769.25. In other words, the trial court was permitted, after analyzing defendant's individual characteristics and circumstances of the offense of which he was convicted, to determine that the appropriate sentence for defendant's crime was the maximum permitted by MCL 769.25. In that context, the trial court's statements, quoted above, simply

reflected its rejection of the proposition that *because* the court had imposed the maximum term of years sentence under MCL 769.25, it therefore must have failed to consider the mitigating factors of youth. We also reject that proposition, as it would effectively render portions of MCL 769.25 nugatory by always requiring a trial court to impose less than the maximum term-of-years sentence in order to "prove" that the trial court itself had considered a defendant's youth as a mitigating factor, lest an appellate court conclude that the mitigation that occurred in the case was "really" done by the Legislature. See *People v Pinkney*, 501 Mich 259, 282; 912 NW2d 535 (2018) (citation omitted). We conclude that the trial court adequately considered defendant's youth as required by *Boykin*.

Defendant also argues in the alternative that his trial counsel's investigation into the mitigating circumstances of defendant's youth and presentation of those circumstances to the trial court was inadequate and deprived him of the effective assistance of counsel. We disagree.

In order to establish ineffective assistance of counsel, a defendant must demonstrate "(1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different." *Acumby-Blair*, 335 Mich App at 228. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Randolph*, 502 Mich at 9 (quotation marks and citation omitted).

Defendant argues that the sentencing memorandum filed by defense counsel "barely scratched the surface of presenting the mitigating circumstances of [defendant's] life," arguing that defendant's childhood was "nightmarish" and providing considerable additional detail regarding defendant's upbringing. However, defendant admits that the memos and reports containing information about defendant's upbringing were filed with the trial court along with defendant's motion to correct an invalid sentence. At the hearing on that motion, the trial court stated that it did not believe that a longer, more detailed sentencing memorandum would have altered the results of the proceedings against defendant, noting that the mere fact that the trial court did not reduce defendant's sentence as a result of the memorandum did not indicate that defendant's counsel was ineffective.

We agree with the trial court. Defendant's sentencing memorandum was a concise and cogent argument highlighting what defense counsel believed were the strongest factors that weighed in favor of mitigation. Defendant has not overcome the presumption that he received competent legal representation merely because defense counsel could have written a longer, more detailed, or even more compelling sentencing memorandum. See *People v Petri*, 279 Mich App 407, 412; 760 NW2d 882 (2008). Further, especially in light of the trial court's statements at the motion hearing, defendant has not shown a reasonable likelihood that, but for his counsel's conduct, the results of his sentencing would have been different. *Randolph*, 502 Mich at 9.

## B. PROPORTIONALITY

Defendant also argues that his sentence for first-degree murder was disproportionate and therefore unreasonable. We disagree. We review for an abuse of discretion a trial court's application of the principle of proportionality. *People v Dixon-Bey*, 321 Mich App 490, 520; 909 NW2d 458 (2017).

A sentence is unreasonable if it is disproportionate to the offense and the offender. *People v Purdle*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 353821), slip op at 3. A sentence within the sentencing guidelines range is presumed to be proportionate, but that presumption may be rebutted. *People v Posey*, 512 Mich 317, 359; 1 NW3d 101 (2023).

Defendant argues that the trial court abused its discretion by imposing the maximum term of years sentence under MCL 769.25 "because of its belief that the Legislature had already taken youth into account by taking mandatory LWOP [life without parole] off the table." We disagree. As discussed, the trial court determined, after considering both the restrictions of MCL 769.25 (which prevented the imposition of a higher sentence) and defendant's youth and the circumstances of the offense, that the maximum term of years was an appropriate sentence. We find no abuse of discretion in that determination.

Defendant also argues that his youth should have resulted in a lower sentence, noting the "impulsive" and "risky" nature of the crime and suggesting that defendant was influenced by peer pressure and a desire to show off in front of his friends. But the range of sentences for first-degree murder found in MCL 769.25 is a range *for juvenile offenders*—defendant's youth does not categorically shield him from receiving the maximum sentence within the range. And while defendant's crime may have been impulsive and motivated by a desire to impress his friends, the fact remains that defendant fired a semi-automatic rifle out of a moving car filled with young people at another moving car filled with young people (including an infant, who received a wound to the head from a bullet but survived), in a populated area, killing a seventeen-year old female and injuring several others. He then attempted to dispose of the rifle and other evidence. Under these circumstances, defendant has not rebutted the presumption that the trial court's sentence was proportionate. *Posey*, 512 Mich at 359.

Affirmed.

/s/ Michael F. Gadola
/s/ Mark T. Boonstra
/s/ Sima G. Patel

-11-